[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13908

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 15, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00396-CR-T-24-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellant,
Cross-Appellee

versus

JOSE THOMAS BARRIERA-VERA,

Defendant-Appellee,
Cross-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(December 15, 2008)**

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

The government appeals the district court's decision to grant Jose Thomas

Barriera-Vera a judgment of acquittal on his convictions for attempted bank robbery and attempting to use a firearm during and in relation to an attempted bank robbery. Barriera-Vera cross-appeals, contending that, in the event the acquittal decision is vacated, he is entitled to a new trial on these two charges. After review and oral argument, we reverse the district court's acquittal decision, affirm as to the grounds in Barriera-Vera's cross-appeal, and reinstate the jury's verdict.

## I. BACKGROUND

### A. Indictment

A four-count indictment charged Barriera-Vera with a June 2, 2006 robbery and a June 28, 2006 attempted robbery. Specifically, the indictment charged Barriera-Vera with: (1) robbing the Florida Central Credit Union located in Brandon, Florida ("Brandon Credit Union") on June 2, 2006 and brandishing a firearm in the course of the robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count I); (2) carrying and using a firearm during and in relation to the bank robbery charged in Count I, in violation of 18 U.S.C. § 924(c) (Count II); (3) attempting to rob the Florida Central Credit Union located in Lakeland, Florida ("Lakeland Credit Union") on June 28, 2006 by force and violence and use of a firearm, in violation of 18 U.S.C. § 2113(a) and (d) (Count III); and (4) carrying and attempting to use a firearm during and in relation to the attempted robbery

2

charged in Count III, in violation of 18 U.S.C. § 924(c) (Count IV).  Thus, the indictment charged Barriera-Vera with crimes as to the same credit union, but in two different locations.

## C.    Trial

On July 17, 2007, Barriera-Vera's jury trial began.

### 1.    June 2, 2006 Robbery of the Brandon Credit Union

Valerie Lochmer, a teller at the Brandon Credit Union, testified about the June 2, 2006 robbery.  The robber was a man wearing a black and red mask, heavy gloves, and camouflage on his neck.  The robber carried a gun and threw a bag at her to fill with money.  He waived the gun at the bag and motioned with it to tell her to hand it to another teller.  The robber left in a white mini-van that was parked outside and was left running while he was inside.

Christine Ahrens testified next.  Ahrens was outside using an automatic teller machine at the Brandon Credit Union on June 2.  Ahrens saw a man covered from head to toe in clothing and carrying a gun enter the Brandon Credit Union. After the robber left, Ahrens followed him shortly and reported the part of the license plate number she could read to the police.  Detective Anthony Paladini investigated the license plate number given by Ahrens and determined it was registered to a rental car.

2.    June 28, 2006 Attempted Robbery of the Lakeland Credit Union

On June 28, 2006, Detective Scott Kercher was told by his supervisor to go to the area of Harden Boulevard and Ariana Street in Lakeland, Florida and look for Barriera-Vera. Kercher obtained a driver's license and photograph of Barriera-Vera to have a physical description of him. Kercher went with Detective Brad Grice in an unmarked police car. Kercher and Grice parked in a high school parking lot on the east side of Harden Boulevard and across the street from a Wachovia Bank. The officers had an unobstructed view of Harden Boulevard and the Wachovia Bank from the parking lot.

After about an hour, Kercher spotted a white Chrysler mini-van (the "van") driving south on Harden Boulevard near the Wachovia Bank. The van slowed to a near stop and appeared to be making a right turn on a street that ran beside the Wachovia Bank. As Kercher started to pull out of the school parking lot, the van sped up and continued driving south on Harden Boulevard. Kercher followed the van and observed that the driver was wearing a gray winter knit cap, which was unusual for the summer. Kercher saw that the driver and the van's license plate number matched the information he had been given for Barriera-Vera. Kercher also testified that Barriera-Vera was driving about ten to fifteen miles per hour below the speed limit and looking in the rearview mirror while Kercher was

4

following him.  Kercher called for backup, and the police eventually conducted a traffic stop on Harden Boulevard approximately two miles south of the Wachovia Bank.  Barriera-Vera presented a Florida driver's license with the name Daniel Melendez-Rodriguez.

The police asked to search Barriera-Vera's van.  Barriera-Vera consented to the search and told Kercher there was a nine millimeter handgun inside the van.  A search of the van revealed, inter alia, an extra license plate, a screwdriver, and a blue duffle bag containing a loaded nine millimeter firearm, gloves, a Tampa Bay Buccaneers sweatshirt and mask, and camouflage body wear.  Kercher testified that he went into the van to retrieve Barriera-Vera's cell phone and saw two hubcaps inside.  Kercher thought that was odd because the van did not have any hubcaps on the wheels and observed that changing hubcaps was a common way to change the appearance of a getaway vehicle.

3.     Barriera-Vera's Interview with Police

After the June 28, 2006 traffic stop, the police brought Barriera-Vera back to the police station.  Barriera-Vera waived his Miranda[1] rights, and Detectives Kercher and Grice interviewed him.  The government played for the jury an audio recording of the interview.

---

[1]Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

Kercher said to Barriera-Vera, "[L]ike I said we you know got some information and that's why we ended up stopping you, ok." Barriera-Vera admitted that he had a loaded nine millimeter firearm in his van and did not have a permit to carry it. Barriera-Vera admitted to possessing all of the other clothing found in his van. Barriera-Vera said he found the duffle bag with some gloves, a mask, and the license plate in it by a hospital where he used to work.

When asked what he was doing that day, Barriera-Vera said he was looking for a job agency and was going to go to the mall near where he was pulled over to look for a job. Barriera-Vera said he was fired from his last job because he was "messing around" with his girlfriend too much. Kercher asked Barriera-Vera if he knew why they followed him, and Barriera-Vera said, "Traffic sticker." Kercher told him, "[W]e had information today about what your, what your travels were gonna be." Barriera-Vera said he did not know why that would be. Barriera-Vera said he was coming from the mall and was going to the job agency. After the officers pointed out that he was driving toward the mall when they stopped him, Barriera-Vera said he had been to the mall, driven north, and then was driving back that way when he was stopped.

Kercher asked Barriera-Vera what he was planning to do with the mask, gun, and gloves that day and this colloquy ensued:

6

| | |
|---|---|
| Kercher: | [I]nformation that we had today was that you were getting ready to go to Wachovia Bank. |
| Barriera-Vera: | Wachovia Bank? |
| Kercher: | Yeah the bank that you slowed down in front of, on Harden Blvd. |
| Barriera-Vera: | Nuh uh, I don't nothing Wachovia. |
| Kercher: | Well that's exactly, do you remember driving down there in front of Wachovia Bank, on Harden Blvd there? |
| Barriera-Vera: | Yeah I went through. |
| Kercher: | Why did you, why did you slow down and almost turn on the road there by the bank? |
| Barriera-Vera: | I don't know I passed through um, in front of Winn Dixie, through, through that street, and there was an officer right there, and there was an accident, a truck, a truck with a ah yellow car I think it was, so I passed through there, I never stopped in there. |
| Kercher: | No, you slowed down at the driveway at the entrance to where the Wachovia Bank was. |
| Barriera-Vera: | Yeah cause the officer was right there, a lady officer. |

Kercher said it looked like Barriera-Vera drove in front of the Wachovia Bank, slowed down like he was going to turn into the Wachovia Bank's driveway, but then continued past it. Kercher then asked Barriera-Vera:

| | |
|---|---|
| Kercher: | So if we had information that someone was going to a bank today. |
| Barriera-Vera: | Mm hmm |
| Kercher: | And we got you stopping and slowing down in front of the bank, getting ready to pull in, the same bank we have information about, and you've got a um, you've got a mask in there, and you've got a gun, loaded gun, 9 millimeter, and you've got us a pair of [g]loves, and you've got an extra tag for |

7

| | your vehicle, um, you've got a camouflage net thing to put over top of your head, um, what do you think? |
| Barriera-Vera: | I know what it looks like yeah, it looks like I'm gonna do something. |

Detective Grice showed Barriera-Vera pictures from the surveillance camera from the Brandon Credit Union in the June 2 robbery. The pictures showed the robber wearing clothing similar to that found in Barriera-Vera's van on June 28. The pictures also showed the robber's van had the same license plate found in Barriera-Vera's van on June 28. At first, Barriera-Vera denied that the van was his. Detective Grice said he knew that Barriera-Vera must have been going through some hard times to do something like this and said, "[W]e had the information, that's why we were sitting there, that's why we picked you up immediately, when you slowed down, cause you had been staking out that bank today. And we knew that, we had your tag number." Barriera-Vera admitted that he needed money to help with his and his girlfriend's debts.

The detectives again asked Barriera-Vera what he was planning to do that day, as follows:

| Kercher: | So tell us what's going on man. You going to the Wachovia today right? |
| Barriera-Vera: | Mm hmm |
| Kercher: | Where were you gonna go? |
| Barriera-Vera: | The same bank like that one. |
| Kercher: | Which bank, which, which bank was this? |

| | |
|---|---|
| Barriera-Vera: | I don't, Florida Credit Central Unit. |
| . . . | |
| Kercher: | Which one. |
| Grice: | There, they got a credit union in Lakeland you're talking about, is it the one up there on the left hand side? |
| Barriera-Vera: | Right, by where the officer was. |
| Grice: | Right, the one by Lakeside Villas, the new mall, across the street. |
| Barriera-Vera: | No where the Winn-Dixie is. |

Barriera-Vera said he went in the Lakeland Credit Union (which is by the Winn Dixie) about two weeks ago, took a deposit slip, and left. Grice asked him, "[S]o you just walked in and picked up a deposit slip and left, just kind of looking it over?" and Barriera-Vera said "Yes." Barriera-Vera said he found all of the things in his van (except for the gun) about two months ago and the only time he used them was in the Brandon Credit Union robbery.

The detectives then returned to asking Barriera-Vera about his intentions that day, as follows:

| | |
|---|---|
| Kercher: | What was you, what was your intentions today, tell me exactly what your intentions were down there at the bank by the Winn Dixie. |
| Barriera-Vera: | Just . . . |
| Kercher: | Well you had all the stuff, you were gonna, you were gonna carry out the robbery today? |
| Barriera-Vera: | Well it was, it was always in my van. |
| Kercher: | Huh? |
| Barriera-Vera: | It was always in my van. |
| Kercher: | Ok. |
| Grice: | But you had it with you when you were there, were |

9

|  |  |
|---|---|
|  | you planning if everything looked right you were gonna do it today? |
| Barriera-Vera: | I don't know, if I did, if I feel like doing it. |
| Kercher: | You were just thinking about it, not sure if you were gonna do it or not. |
| . . . |  |
| Barriera-Vera: | Yeah. |

Barriera-Vera explained that he got $6,700 from the Brandon Credit Union robbery. He and his girlfriend had spent it all to pay rent, bills, and traffic tickets. The detectives asked Barriera-Vera about his girlfriend's reaction to the robbery, as follows:

|  |  |
|---|---|
| Kercher: | What did she say when you told her you robbed a bank and you brought all this money home? |
| Barriera-Vera: | She got scared. |
| Kercher: | She got scared? |
| Grice: | Did she know you were gonna come try one today? Or that you were thinking about doing it again? |
| Barriera-Vera: | I tell her but I say I might just get a job because. |
| Kercher: | You told her you. |
| Barriera-Vera: | I have a . . . |
| Grice: | You told her you may do it again, or you might get a job? |
| Barriera-Vera: | Yeah I told her I might just get a job because I don't think I can do it again. |
| Grice: | Ok |
| Barriera-Vera: | Cause I tell her one time you get lucky but two I don't think so. |

Barriera-Vera eventually admitted his real name and told them he had purchased identification papers from another man with good credit. The detectives asked Barriera-Vera to describe the Brandon Credit Union robbery. Barriera-Vera

said he tried to go through with the robbery for months and every time he got scared and left. His girlfriend made him feel bad about it, so he finally went through with it. Barriera-Vera stated that he parked and looked around first to make sure there were not any kids in danger. Barriera-Vera said, "I was nervous and I'm scared but I just asked them for the money and I just tell I was not here to harm nobody, I just need the money and that's it. I tell them sorry and everything I just walk away." During that robbery, Barriera-Vera used the blue duffle bag found in his van and threw it at the tellers and told them to fill it up. Barriera-Vera then left, drove back to the hospital where he used to work, and threw away all the clothes he wore in the robbery, except for the mask and gloves. He left the van parked with the money inside and rode away on his bike. His girlfriend eventually picked him up and he threw away the bike. The two of them retrieved the van and the money the next day.

After the government played the recording of Barriera-Vera's interview, Kercher explained that the Lakeland Credit Union was in a shopping plaza with a Winn Dixie that is just north of the Wachovia Bank on the other side of an intersection. Kercher explained that Barriera-Vera could have reached the Lakeland Credit Union by making a right turn on the road beside the Wachovia bank where he slowed down, making another immediate right turn on a road that

11

goes behind the Wachovia Bank, and then driving north on that road to the shopping plaza with the Lakeland Credit Union. Kercher testified that he could not see the shopping center with the Lakeland Credit Union from where he was parked in the school parking lot.

## D.    Jury Verdict, Acquittal Ruling, and Sentencing

At the close of the government's case, Barriera-Vera moved for a judgment of acquittal on Counts III and IV, the counts related to the attempted robbery. The district court reserved its ruling on the motion.

The jury found Barriera-Vera guilty of all four counts. After the jury's verdict, the district court granted Barriera-Vera's motion for judgment of acquittal on Counts III and IV. The district court stated that the case was a "close call" and that it had not found a case from this Court with similar facts. The district court acknowledged that the jury had found Barriera-Vera guilty of Counts III and IV, but determined that the evidence was insufficient to convict Barriera-Vera on these counts. The district court sentenced Barriera-Vera to 141 months' imprisonment for Counts I and II.

The government appeals the district court's decision to grant Barriera-Vera a judgment of acquittal on Counts III and IV. Barriera-Vera cross-appeals that he is entitled to a new trial on Counts III and IV if this Court reverses the district court's

12

acquittal decision.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In order to convict a defendant of the crime of attempt, the government must prove "(1) the defendant was acting with the kind of culpability otherwise required for the commission of the crime for which he is charged with attempting, and (2) the defendant was engaged in conduct that constitutes a substantial step toward the commission of the crime."[2] United States v. Root, 296 F.3d 1222, 1227-28 (11th Cir. 2002) (quotation marks omitted). In order to show a substantial step was taken, "'the defendant's objective acts, without reliance on the accompanying mens rea, must mark the defendant's conduct as criminal.'" Id. at 1228 (quoting United States v. Carothers, 121 F.3d 659, 662 (11th Cir. 1997)).

As noted by the district court, this is a close call as to whether the evidence was sufficient to convict Barriera-Vera. However, viewing the evidence in the light most favorable to the jury's verdict, and making all reasonable inferences and

_____

[2]We review de novo a district court's decision to grant a judgment of acquittal. United States v. Khanani, 502 F.3d 1281, 1295 (11th Cir. 2007). "Where a jury returns a verdict of guilty and the district court sets aside that verdict by entering a judgment of acquittal based on the insufficiency of the evidence, the decision of the district court is entitled to no deference." United States v. Williams, 390 F.3d 1319, 1323 (11th Cir. 2004) (quotation marks omitted). Thus, we must decide "whether the evidence, examined in a light most favorable to the Government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt." Id. (quotation marks omitted). We make all credibility determinations in support of the jury's verdict. Id.

credibility determinations in favor of that verdict, we cannot say that no rational trier of fact could find Barriera-Vera guilty beyond a reasonable doubt, and thus we must reverse.

As to whether Barriera-Vera had the specific intent to rob the Lakeland Credit Union, Barriera-Vera himself volunteered to the detectives that he was going to the Lakeland Credit Union in the Winn Dixie shopping center, not the Wachovia Bank. Indeed, when the police asked Barriera-Vera about the Wachovia Bank, Barriera-Vera himself corrected them. Barriera-Vera also admitted that: (1) he had cased the Lakeland Credit Union two weeks earlier when he went inside, took a deposit slip, looked around, and left; and (2) he had just driven by the Lakeland Credit Union. Further, Barriera-Vera's discussion with the detectives revealed that he and his girlfriend still were in need of money, despite the money obtained from his robbery of the Brandon Credit Union, and that Barriera-Vera had told his girlfriend that he was thinking of committing another robbery. Barriera-Vera had in his van that day a loaded firearm, clothing, and other disguises to execute the robbery and a different license plate and hubcaps to alter the appearance of his van as a getaway vehicle. The jury also heard evidence that, in the first robbery of the Florida Central Credit Union at the Brandon location, Barriera-Vera used the exact same tools and van. See United States v. Shores, 966

14

F.2d 1383, 1386-87 (11th Cir. 1992) (concluding that district court did not abuse its discretion in admitting evidence of the defendant's statement that he previously had robbed a bank to show his state of mind in trial for attempted bank robbery). All of this evidence cumulatively was sufficient for a reasonable jury to find that Barriera-Vera had the specific intent to rob the Lakeland Credit Union that day.[3]

There is also sufficient evidence to support a determination that Barriera-Vera made a substantial step toward the robbery. Barriera-Vera admitted that he had cased the Lakeland Credit Union two weeks earlier. On June 28, 2006, he was spotted driving near the intersection of the Lakeland Credit Union wearing a winter knit cap in the middle of summer in Florida. Barriera-Vera had inside his van a duffle bag containing a loaded firearm, mask, gloves, and extra clothing to cover himself, all of which he used in the Brandon Credit Union robbery, and an extra license plate and hubcaps that could be used to alter the appearance of his van. The jury could reasonably find that Barriera-Vera put those tools in his van that day

---

[3]Despite Barriera-Vera's equivocal statements that he was not sure if he was going to rob the Lakeland Credit Union that day and that he maybe was going to get a job, the jury was free to disbelieve these self-serving statements. See United States v. Cruz-Valdez, 773 F.2d 1541, 1547 n.6 (11th Cir. 1985) (en banc) (stating, in a criminal case and in regards to the defendant's interview statement to a federal inspector, that "[t]he jury was free to believe the inculpatory part of his statement and disbelieve the exculpatory part"); see also United States v. Sharif, 893 F.2d 1212, 1214 (11th Cir. 1990) (stating that a jury is free to believe or disbelieve all or part of a witness's testimony); United States v. Prince, 883 F.2d 953, 959 n.3 (11th Cir. 1989) (same).

precisely because he intended to rob the Lakeland Credit Union.[4] This evidence, considered together, was sufficient for the jury to find that Barriera-Vera went beyond mere preparation and took a substantial step toward robbing the Lakeland Credit Union.

Further, the jury could have inferred from this evidence that Barriera-Vera intended to and would have robbed the Lakeland Credit Union but for two occurrences. First, as Barriera-Vera approached the intersection of Harden Boulevard and Ariana Street where he needed to make a right turn to reach the shopping plaza with the Lakeland Credit Union, there was an accident at the intersection with a police officer present. Rather than turning at the intersection with a police presence, Barriera-Vera continued south on Harden Boulevard and intended to circle back to the Lakeland Credit Union. Second, as Barriera-Vera crossed in front of the Wachovia Bank and slowed to make a right turn to circle back to the Lakeland Credit Union, he was thwarted by the sight of an unmarked (but readily recognizable) police car across the street pulling out of a parking lot. Rather than make the right turn, Barriera-Vera continued driving south on Harden Boulevard at a speed well below the speed limit and checked his rearview mirror

---

[4]The jury was also not required to believe Barriera-Vera's statement that he had been driving around for weeks with a loaded gun and the other tools he used to rob the Brandon Credit Union in his van.

16

constantly. Despite the location where Barriera-Vera was spotted by the detectives and eventually stopped, there was sufficient evidence to support a reasonable inference that Barriera-Vera was on his way to rob the Lakeland Credit Union when his plan was interrupted by these two occurrences.

In sum, we emphasize that this is not a case where the only evidence of attempt is that Barriera-Vera was spotted in the vicinity of the Lakeland Credit Union with the tools to commit a robbery in his van. Instead, this is a case where the jury could have inferred from the evidence, which consisted of Barriera-Vera's statements and actions, that Barriera-Vera: (1) cased the Lakeland Credit Union two weeks earlier; (2) needed money because he and his girlfriend had spent all the money from the Brandon Credit Union robbery; (3) told his girlfriend that he was thinking of committing another robbery; (4) gathered in his van the tools necessary for the robbery (including a loaded firearm, mask, gloves, and other clothing to conceal his identity) and the getaway (including a different license plate and hubcaps); (5) put on his winter knit cap to conceal his identity, even though it was summer in Florida; and (6) drove to the area of the Lakeland Credit Union with the intent to rob the Lakeland Credit Union and to use the loaded firearm to commit the robbery, only to be thwarted by the presence of police at the intersection of the Lakeland Credit Union and further down the street where he intended to double

17

back on a side road to reach the Lakeland Credit Union.

There certainly was evidence from which the jury could have made different findings and found Barriera-Vera not guilty of Counts III and IV. And if the jury had reached that verdict instead, we cannot say it would have been an unreasonable verdict in light of the inferences that could be drawn either way from the evidence. But the jury found Barriera-Vera guilty of Counts III and IV. By emphasizing the evidence that weighed in Barriera-Vera's favor instead of drawing all inferences in favor of the jury's verdict, the district court effectively substituted its own opinion for that of jury. See United States v. Molina, 443 F.3d 824, 828-30 (11th Cir. 2006) (reversing post-verdict judgment of acquittal); United States v. Miranda, 425 F.3d 953, 959-62 (11th Cir. 2005) (same). Thus, we must reverse the district court's acquittal decision on Counts III and IV and reinstate the jury's verdict.

## B.    Admission of Information from the Anonymous Phone Call

Barriera-Vera cross-appeals that he is entitled to a new trial on the attempted robbery Counts III and IV because the district court erred in admitting references to the anonymous tip received by police on June 28, 2006 in Kercher's interview with Barriera-Vera and  Kercher's trial testimony.[5]  Barriera-Vera argues that

---

[5]Barriera-Vera also cross-appeals that he is entitled to a new trial on Counts III and IV because of prosecutorial misconduct during closing argument. Because Barriera-Vera did not object to the prosecutor's remarks in the district court, we review this issue only for plain error. United States v. Merrill, 513 F.3d 1293, 1306-07 (11th Cir. 2008). We find no error, much less

18

admission of this evidence violated hearsay rules and the Confrontation Clause.[6]

Before trial, Barriera-Vera filed a motion in limine to prohibit the government from commenting on information police received on June 28, 2006 about Barriera-Vera's prior or proposed actions. Police received an anonymous call about an individual, named either Daniel Rodriguez or Melendez, that revealed his involvement in the Brandon Credit Union robbery on June 2, 2006 and his possible actions on June 28, 2006. As discussed above, the detectives were dispatched to the area of the Wachovia Bank on Harden Boulevard based on this information, spotted Barriera-Vera (who was using a driver's license with the name Daniel Rodriguez-Melendez) in the area based on the caller's description of his van, and eventually stopped and arrested him.

The district court granted Barriera-Vera's motion in limine as to the content of the information in the anonymous call, but determined that the police officers could testify as to what they did and why they went to the scene. The district court later clarified that the officers could not testify that they went to the scene because

---

plain error, in the prosecutor's remarks. Further, we note that the district court instructed the jury to make its decision based on the testimony and other evidence at trial, not based on what the lawyers say.

[6]We review the district court's evidentiary rulings regarding admission of evidence for an abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). We review de novo whether a defendant's Sixth Amendment right to confrontation was violated. United States v. Yates, 438 F.3d 1307, 1311 (11th Cir. 2006) (en banc).

19

an anonymous caller told them that a bank was going to be robbed. At trial, the district court overruled Barriera-Vera's objections to the references to the phone call in the transcript of his interview with police and in Kercher's testimony.

The district court did not abuse its discretion in allowing the references to the phone call in the detectives' questions during Barriera-Vera's interview and in Kercher's testimony. None of these references was used to prove the truth of the matter asserted, i.e., that Barriera-Vera was going to commit a robbery. Kercher testified only that he received information and instructions from his supervisor to go to Harden Boulevard. Kercher merely explained at trial why he took the actions he did and did not testify as to what information was relayed to him from the anonymous phone call. See United States v. Baker, 432 F.3d 1189, 1209 n.17 (11th Cir. 2005) ("Statements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions . . . ."). In addition, Kercher's references to the anonymous phone call in Barriera-Vera's interview were admitted to provide context and explain Barriera-Vera's responses, not to prove the truth of the matter asserted.

Thus, admission of Kercher's interview statements and trial testimony regarding the anonymous phone call did not violate hearsay rules or the

Confrontation Clause because they were not admitted for the truth of the matter asserted. See Crawford v. Washington, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9 (2004) (stating that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"). Accordingly, in Barriera-Vera's cross-appeal, as to Counts III and IV, we affirm his convictions.

## III.  CONCLUSION

We reverse the judgment of acquittal, reinstate the jury's verdict as to Counts III and IV, and remand to the district court for sentencing. We deny the claims in Barriera-Vera's cross-appeal and affirm his convictions on Counts III and IV.

**REVERSED IN PART and AFFIRMED IN PART.**