[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14994

_____

MIGUEL ALVARADO-LINARES,
a.k.a. Joker,

                                                  Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

                                                  Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket Nos. 1:19-cv-01962-RWS,
1:10-cr-00086-RWS-ECS-1

_____

Before NEWSOM, BRANCH, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal presents a simple question with a surprisingly complicated answer: are murder and attempted murder crimes of violence?

Miguel Alvarado-Linares participated in several shootings as a member of MS-13, a violent gang. He was convicted of one count of conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d). He was also convicted of four counts under the Violent Crimes in Aid of Racketeering Act (VICAR), 18 U.S.C. § 1959(a)—two for murder and two for attempted murder. Because he used a gun in committing those offenses, he was also convicted of four corresponding counts of using a firearm in relation to each "crime of violence" under 18 U.S.C. § 924(c). For these nine convictions—the conspiracy conviction, the four VICAR convictions, and the four corresponding firearms convictions—he is serving three concurrent life sentences plus eighty-five years. His eighty-five-year sentence is based exclusively on the four firearms convictions.

Alvarado-Linares filed a 28 U.S.C. § 2255 motion to vacate his firearms convictions and his eighty-five-year sentence. The district court denied the motion, Alvarado-Linares appealed, and we granted a certificate of appealability on one issue: whether his four firearms convictions are unconstitutional in light of the Supreme

Court's decision in *United States v. Davis*, 588 U.S. ——, 139 S. Ct. 2319 (2019), which held that Section 924(c)(3)(B)'s "residual clause" was unconstitutionally vague.

In the district court and on appeal, the government argued that, despite *Davis*, Alvarado-Linares's four firearms convictions are valid because his VICAR convictions are "crimes of violence" under another of Section 924(c)'s clauses. Specifically, the government argues that Alvarado-Linares's VICAR convictions are "crimes of violence" under the "elements clause," which defines a crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). We agree. Accordingly, we affirm the district court.

## I.

Alvarado-Linares was a member of the violent MS-13 gang. To enhance his standing in the gang, he shot and killed L.K. and J.G. And he tried to kill two others.

### A.

When Alvarado-Linares and his fellow gang members were prosecuted, the government charged Alvarado-Linares with conspiracy under the Racketeer Influenced and Corrupt Organizations Act (Count One) and committing four "violent crimes in aid of racketeering activity" (Counts Two, Four, Eight, and Ten). A person commits a violent crime in aid of racketeering when he

commits a particular kind of violent crime—such as "murder"—"for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a). The indictment charged Alvarado-Linares with aiding and abetting state law crimes as part of the conspiracy. In Counts Two and Four, the indictment charged that Alvarado-Linares and other gang members "aided and abetted by each other . . . did knowingly and unlawfully murder . . . in violation of Official Code of Georgia, Sections 16-5-1(a) . . . for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity[.]" In Counts Eight and Ten, it charged that he and other gang members "aided and abetted by each other . . . did knowingly and unlawfully attempt to murder . . . in violation of Official Code of Georgia, Sections 16-5-1(a) and 16-4-1" for the same purpose.

The government also charged Alvarado-Linares with four counts of using a firearm in relation to a "crime of violence," 18 U.S.C. § 924(c)(1), with each count corresponding to one of the VICAR charges. For example, Count Two charged Alvarado-Linares with aiding and abetting the murder of L.K. for the purposes of advancing his position in MS-13, and Count Three charged him with carrying a firearm during that "crime of violence." Similarly, the indictment charged him with aiding and abetting the murder of J.G. (Count Four) and the corresponding firearm charge (Count Five); aiding and abetting the attempted murder of D.H. (Count Eight) and the corresponding firearm charge (Count Nine); and

aiding and abetting the attempted murder of J.G. (Count Ten) and the corresponding firearm charge (Count Eleven).

When instructing the jury on the VICAR counts, the trial court used the definition of Georgia malice murder to define the murder element. O.C.G.A. § 16-5-1(a). That is, the district court told the jury that "under Georgia law, a person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." As to the VICAR murder charges, the trial court told the jury that it could convict Alvarado-Linares only if the government proved beyond a reasonable doubt that "the defendant committed the murder or aided and abetted another individual in the commission of the murder as charged." For the attempted VICAR murder charges, the government had to prove that "the defendant committed the *attempted* murder or aided and abetted another individual in the commission of the *attempted* murder as charged."

The jury found Alvarado-Linares guilty of the conspiracy offense, the four VICAR offenses (Counts Two, Four, Eight, and Ten) and the four corresponding firearms offenses (Counts Three, Five, Nine, and Eleven). For the four firearms convictions, the jury specially found that Alvarado-Linares had carried and discharged the firearm during a crime of violence.

The district court sentenced Alvarado-Linares to life imprisonment on each of Counts One, Two, and Four, set to run concurrently. It sentenced him to twenty years each on Counts Eight and Ten, set to run concurrently with each other and with the three life

sentences imposed for Counts One, Two, and Four. It sentenced him to ten years on Count Three and twenty-five years each on Counts Five, Nine, and Eleven, all to run consecutively to each other and to the life sentences. In total: three concurrent life sentences plus eighty-five years. Alvarado-Linares filed a direct appeal, and we affirmed his convictions and sentences.

### B.

After his conviction became final, Alvarado-Linares filed a *pro se* Section 2255 motion, in which he argued that his firearms convictions were unconstitutional because Section 924(c)'s residual clause is unconstitutionally vague. Alvarado-Linares argued that the Supreme Court's decision in *Davis* "substantially support[ed]" ground one of his pending Section 2255 motion. Specifically, Alvarado-Linares argued that his VICAR murder and attempted murder convictions were not crimes of violence under Section 924(c)'s still-constitutional elements clause.

The government argued that *Davis* did not help Alvarado-Linares because his underlying VICAR convictions satisfied the elements clause. "Because proof of Alvarado-Linares's VICAR predicate crime required the jury to find the use, attempted use, or threatened use of physical force, then the crime qualifies as a crime of violence under [the elements clause]."

The district court entered a single order denying Alvarado-Linares's claims. As relevant here, the district court agreed with the government that "because [Alvarado-Linares] was not sentenced

under the residual clause . . . *Davis* does not apply to his case." Alvarado-Linares then filed a motion for reconsideration. The district court denied the motion, explaining that because "Alvarado-Linares' Section 924(c) convictions are all predicated on substantive VICAR offenses charging either murder or attempted murder . . . [he] was not sentenced under the residual clause of 924(c)."

We granted a certificate of appealability (COA) on one issue: whether Alvarado-Linares's Section 924(c) firearms convictions are unconstitutional in light of the Supreme Court's holding in *Davis*.

## II.

When reviewing a district court's denial of a Section 2255 motion, we review questions of law *de novo* and factual findings for clear error. *Steiner v. United States*, 940 F.3d 1282, 1288 (11th Cir. 2019). Whether a particular offense is a crime of violence under 18 U.S.C § 924(c)(3) is a question of law that we review *de novo*. *Id.*

## III.

Section 924(c) makes it a crime to use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). It defines a "crime of violence" by refence to two clauses. Under what we call the "elements clause," the statute says that a crime of violence is a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A).

Under the "residual clause," the statute provides that a crime of violence is a felony "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). In *United States v. Davis*, 588 U.S. ——, 139 S. Ct. 2319 (2019), the Supreme Court held that the statute's residual clause—section 924(c)(3)(B)—is unconstitutionally vague. *Id.*, at ——, 139 S. Ct., at 2336. We have since held that *Davis* announced a new substantive rule that applies retroactively to convictions that are already final. *See In re Hammoud*, 931 F.3d 1032, 1038–39 (11th Cir. 2019).

Turning to the case at hand, we certified one issue for appeal: whether Alvarado-Linares's firearms convictions are unconstitutional in light of the Supreme Court's holding in *Davis*. To resolve that question in his favor, Alvarado-Linares must "bear the burden of showing that he is actually entitled to relief on his *Davis* claim, meaning he will have to show that his § 924(c) conviction[s] resulted from application of solely the [now-unconstitutional] residual clause." *In re Hammoud*, 931 F.3d at 1041; *see also Beeman v. United States*, 871 F.3d 1215, 1222–25 (11th Cir. 2017). Sometimes, this kind of question can be resolved by a "finding of historical fact"—in other words, there may be record evidence that the unconstitutional clause did or did not lead to a conviction or sentence. *Williams v. United States*, 985 F.3d 813, 816 (11th Cir. 2021). Sometimes, the question must be resolved "by reference to legal principles alone"—that is, parsing the state of the law to determine whether the residual clause affected the conviction or sentence. *Id.*

Here, the parties agree that the answer to this question turns on legal principles alone. The government argues that VICAR murder and attempted murder are "crimes of violence" under the elements clause such that we can be confident the now-unconstitutional residual clause played no role in Alvarado-Linares's conviction for the corresponding firearm offenses; Alvarado-Linares argues the opposite. Unlike in some of our previous cases, *e.g.*, *Williams*, 985 F.3d at 816, the parties do not distinguish between the state of the law at the time of the conviction and the state of the law today. So, to decide this appeal as the parties have litigated it, we must determine whether Alvarado-Linares's convictions for VICAR murder and attempted murder satisfy the elements clause and have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

We divide our discussion into four parts. First, we hold that we must apply the "modified categorical approach" to determine what crimes, with what elements, the jury determined that Alvarado-Linares committed when it found him guilty of the four VICAR offenses. Second, we consider whether the jury convicted Alvarado-Linares of a crime of violence when it found in Counts Two and Four that he committed Georgia malice murder in violation of the VICAR statute. Third, we consider whether the jury convicted Alvarado-Linares of a crime of violence when it found in Counts Eight and Ten that he committed Georgia attempted murder in violation of the VICAR statute. Finally, we address Alvarado-

Linares's argument that none of his VICAR convictions are crimes of violence because the government won his convictions on an aiding and abetting theory.

### A.

We begin by addressing how to assess whether Alvardo-Linares's VICAR convictions have "as an element the use, attempted use, or threatened use of physical force." Ordinarily, we use a categorial approach to determine whether a predicate offense is a "crime of violence" under the elements clause. *United States v. Bates*, 960 F.3d 1278, 1286 (11th Cir. 2020). That is, we ask whether the *elements* of the predicate offense in the statute denote a "crime of violence"; we do not look to the particular facts of the defendant's conduct or the specifics of the defendant's trial. *Id.* But when a statute is divisible—meaning it defines multiple potential crimes—we instead apply the modified categorical approach. Under this approach, we may look beyond the elements of the predicate offense to a limited class of documents—including the indictment, jury instructions, plea agreement, and plea colloquy—to determine which specific crime, with which elements, a defendant was convicted of. *Id.*

The parties agree that the VICAR statute is divisible, and they are right. A person commits a violent crime in aid of racketeering when he, "for the purpose of gaining entrance to or maintaining or increasing position in" a RICO enterprise, "murders, kidnaps, maims, assaults with a dangerous weapon, commits assault

resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires to do so." 18 U.S.C. § 1959(a). Because the statute lists multiple acts that each qualify as a crime, we apply the modified categorical approach to determinate whether a VICAR offense is a "crime of violence" under Section 924(c)(3).

Although they agree that the modified categorical approach governs, the parties disagree about how the modified categorical approach applies to Alvarado-Linares's convictions. The problem arises from the way Alvarado-Linares was charged and convicted. The VICAR statute criminalizes committing murder or attempted murder to advance a racketeering enterprise. But the indictment and the jury instructions in this case further defined "murder" as Georgia malice murder. So, which do we consider for the purposes of the modified categorical approach: the elements in the VICAR statute, the elements of state law murder, or something else?

Alvarado-Linares argues that we must look through the VICAR statute to the elements of the underlying state predicate crime, which is Georgia malice murder. The government responds that we should look only to the generic federal definition of "murder" as that term is used in the statute.

We believe, given the facts and circumstances of this case, that Alvarado-Linares has the better argument. We have never addressed, and do not decide now, whether the government *should* charge a VICAR offense by reference to a state law crime or how a

trial court *should* instruct a jury about a VICAR offense.[1] Here, however, whether required to do so or not, the indictment alleged that Alvarado-Linares's VICAR charges were based on violations of the Georgia malice murder statute and attempted murder statute, and the trial court told the jury to consider whether Alvarado-Linares committed those crimes as defined by state law. The modified categorical approach requires us to ask whether a crime, as charged and instructed, has "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). On the facts of this case, we cannot answer that question without looking at Georgia law, which is consistent with the approach adopted by several of our sister circuits when confronted with similar circumstances. *See United States v. Toki*, 23 F.4th 1277, 1279–81 (10th Cir. 2022) (VICAR assault was not crime of violence because underlying Utah and Arizona aggravated assault are not crimes of violence); *United States v. White*, 7 F.4th 90, 104 (2d Cir. 2021) (VICAR assault was

---

[1] At times, Alvarado-Linares's briefs argue that, to convict under VICAR, the government must establish that a charged state crime matches the generic federal definition of a crime in the VICAR statute. But this argument goes to the legitimacy of the four underlying VICAR convictions, not the Section 924(c) firearms convictions. Because we did not grant a COA on the validity of Alvarado-Linares' four VICAR convictions, we decline to address Alvarado-Linares's matching argument on appeal. *See Murray v. United States*, 145 F.3d 1249, 1250–51 (11th Cir. 1998) ("[I]n an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the COA.").

crime of violence where underlying "New York offense of assault in the second degree" was crime of violence); *United States v. Mathis*, 932 F.3d 242, 264-67 (4th Cir. 2019) (VICAR murder predicated on Virginia first-degree murder statute was crime of violence based on state law elements).

### B.

We turn now to whether the jury convicted Alvarado-Linares of crimes of violence when it found in Counts Two and Four that he had committed Georgia malice murder in violation of the VICAR statute. To qualify as a crime of violence an offense must have as an element the use, attempted use, or threatened use of "physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Physical force is "simply force exerted by and through concrete bodies, as opposed to intellectual force or emotional force." *United States v. Castleman*, 572 U.S. 157, 170–71, (2014) (citations and internal quotation marks omitted). We have held that "the intentional causation of bodily injury or death, even by indirect means such as withholding medical treatment or food, necessarily involves the use of physical force." *United States v. Sanchez*, 940 F.3d 526, 535 (11th Cir. 2019).

We have not yet considered whether Georgia malice murder is a crime of violence under Section 924(c)(3)'s elements clause. We have, however, held that federal second-degree murder, defined as the "killing of a human being with malice aforethought," is a crime of violence under Section 924(c)(3). *Thompson v. United*

*States*, 924 F.3d 1153, 1158 (11th Cir. 2019) (citing 18 U.S.C. § 1111(a)). There, we explained that a statute criminalizing "the actual killing of another person" inevitably involves a level of force capable of "causing physical pain or injury." *Id.* And we held that the application of such force with "malice aforethought" entails the use of physical force against the person of another, satisfying Section 924(c)'s elements clause. *Id.* at 1158–59 (citing *Johnson v. United States*, 559 U.S. 133, 140 (2010) (concluding that the phrase "physical force" in the Armed Career Criminal Act's materially similar elements clause refers to "force capable of causing physical pain or injury to another person")).

Our analysis in *Thompson* controls our determination here. Like the statute at issue in *Thompson*, Georgia's murder statute criminalizes killing another person with malice aforethought. O.C.G.A. § 16-5-1(a). The Georgia malice murder statute states that "[a] person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." O.C.G.A. § 16-5-1(a). Because we have held that killing in such a manner necessarily entails the use of physical force against the person of another, we conclude that Georgia malice murder, like federal second-degree murder, is a crime of violence under Section 924(c)'s elements clause.

Alvarado-Linares argues that the Supreme Court's decision in *Borden v. United States*, 593 U.S. ——, 141 S. Ct. 1817 (2021) compels a different result. The Supreme Court in *Borden* held that offenses with a *mens rea* of recklessness, though they may involve

the use of physical force, do not require that force be directed *against another*. The Court explained that a crime of violence involves "a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *Id.*, at ——, 141 S. Ct. at 1830. Accordingly, ordinary recklessness crimes are not crimes of violence under Section 924(c)'s elements clause. *Id.*

*Borden* does not help Alvarado-Linares. Unlike the kinds of recklessness crimes discussed in *Borden*, Georgia malice murder must be committed with "malice aforethought"—either express or implied. Express malice is the "deliberate intention unlawfully to take the life of another human being[.]" *Id.* at § 16-5-1(b). Implied malice exists "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." *Id.* The Georgia Supreme Court has explained that the concept of malice—either express or implied—"incorporates the intent to kill" that goes beyond mere recklessness. *Parker v. State*, 507 S.E.2d 744, 747 (Ga. 1998) (malice murder is committed when the evidence establishes "an express or, in the alternative, an implied intent to commit an unlawful homicide"), *overruled on other grounds by Linson v. State*, 287 Ga. 881, 886 (Ga. 2010); *see also Latimore v. State*, 421 S.E.2d 281, 282 (Ga. 1992) (malice "incorporates the intent to kill").

Alvarado-Linares argues that, no matter what the Georgia Supreme Court has said, it has in practice affirmed malice murder convictions for ordinary recklessness. But we think he is misreading Georgia caselaw. The Georgia Supreme Court's decisions

affirming convictions for implied-malice murder involve very serious intentional crimes—not the "too common" recklessness that *Borden* excludes from its definition of violent crimes. *See, e.g., Burney v. State*, 845 S.E.2d 625, 632–33 (Ga. 2020) (affirming conviction where defendants, in the course of committing a burglary, held an elderly man at gunpoint and taped him to a chair, where he died after several days without food or medication); *Cook v. State*, 546 S.E.2d 487, 488 (Ga. 2001) (affirming conviction where defendant covered his victim's mouth to prevent her from screaming while he was sexually assaulting her, unintentionally suffocating her). The specific decisions cited by Alvarado-Linares are no different. *See, e.g., Browder v. State*, 751 S.E.2d 354, 357 (Ga. 2013) (affirming conviction where defendant fired two shots from his car which hit a victim in the neck but later claimed it was meant to be a warning shot and that he did not intend to hit anyone); *Sanders v. State*, 715 S.E.2d 124, 126–27 (Ga. 2011) (affirming conviction where two parents starved their six-week-old child to death), overruled on other grounds by *Pounds v. State*, 846 S.E.2d 48 (Ga. 2020). These decisions involve conduct surpassing ordinary recklessness and demonstrating an "abandoned and malignant heart."

In short, we continue to hold that murder is a "crime of violence" if it is defined as the unlawful killing of a human being with malice aforethought. *See United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc) (post-*Borden* holding malice murder to be a crime of violence). The Supreme Court has emphasized that we must consider "context and purpose" when applying the

categorical approach. *Borden*, 593 U.S., at ——, 141 S. Ct. at 1830. Accordingly, "we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'" *Id.* Malice murder meets the common, ordinary definition of a violent crime. Because implied-malice murder, the most innocent conduct criminalized by Georgia's malice murder statute, requires a mental state greater than ordinary recklessness, malice murder is a crime of violence under Section 924(c)'s elements clause.

Having addressed Georgia law, we turn briefly back to federal law. Alvarado-Linares argues that both Georgia malice murder (i.e., the state predicate crime) and generic federal murder (i.e., the word as used in the VICAR statute) must qualify as crimes of violence under Section 924(c)(3) for his firearms convictions to stand under the elements clause. Assuming without deciding that Alvarado-Linares is correct that his convictions can stand only if the generic federal definition of murder contains an element of force (even though federal law murder was not charged in the indictment or instructed to the jury), we have little trouble concluding that a VICAR murder conviction predicated on federal murder also meets the definition of a crime of violence. Federal first and second-degree murder are each defined as "the unlawful killing of a human being with malice aforethought," with first-degree murder additionally requiring an element of premeditation. *See* 18 U.S.C. § 1111(a). Because we have already held that the federal crime of second-degree (non-premediated) murder is a crime of violence under Section 924(c)(3)'s elements clause, *Thompson*, 924 F.3d at 1158–

59, a VICAR murder conviction predicated on the federal definition of murder is clearly a crime of violence under that statute.

## C.

Turning to Counts Five and Eight, Alvarado-Linares argues that even if VICAR murder is a crime of violence under the elements clause, VICAR attempted murder is not. To determine whether Alvarado-Linares's VICAR attempted murder convictions satisfy the elements clause, we again apply the modified categorical approach. *See United States v. Taylor*, 596 U.S. ——, ——, 142 S. Ct. 2015, 2020 (2022). Specifically, we must decide whether a conviction for attempted murder requires the government to prove—as an element of the offense—the use or attempted use of physical force.

We hold that it does. A person commits Georgia murder when he "unlawfully and with malice aforethought, either express of implied, causes the death of another human being." O.C.G.A. § 16-5-1(a). A person commits Georgia attempted murder when, "with intent to commit [Georgia murder], he performs any act which constitutes a substantial step toward the commission of that crime." O.C.G.A. § 16-4-1. Likewise, a person commits federal murder by the "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). And a person commits federal attempted murder when, intending to commit federal murder, he performs "actions that constituted a 'substantial step toward the commission of [that] crime." *United States v. Yost*, 479 F.3d 815,

819 (11th Cir. 2007); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 106−07 (2007) (under federal law, criminal attempt requires intent to commit the completed offense, plus "a 'substantial step' toward completing the offense"). In other words, every defendant convicted of attempted murder under Georgia or federal law must have had the intent to kill someone and to have completed a substantial step towards that goal. We have held that such an attempt crime qualifies as an attempted use of force under the elements clause. *See Hylor v. United States*, 896 F.3d 1219, 1223 (11th Cir. 2018) (state conviction for attempted first-degree murder qualified as a violent felony under ACCA's elements clause).

Alvarado-Linares argues that the Supreme Court's decision in *United States v. Taylor* alters this conclusion. 596 U.S. ——, 142 S. Ct. 2015 (2022). There, the Supreme Court held that a conviction for attempted Hobbs Act robbery did not qualify as a crime of violence under Section 924(c)'s elements clause. *Id.*, at ——, 142 S. Ct. at 2020–21. One element of completed Hobbs Act robbery is that a defendant take property "by means of actual or threatened force." 18 U.S.C. § 1951(b). Because a completed Hobbs Act robbery can be committed by threat, the government may win a conviction for attempted Hobbs Act robbery by proving that a defendant *attempted to threaten* someone. Although the elements clause covers the use of force, the attempt to use force, and the threat to use force, it does not cover *attempts to threaten* the use of force. Accordingly, the Supreme Court reasoned that a conviction for

attempted Hobbs Act robbery falls outside the elements clause.[2] *Taylor*, 596 U.S., at ——, 142 S. Ct. at 2021.

We think *Taylor* is distinguishable. We read *Taylor* to hold that, where a crime may be committed by the threatened use of force, an attempt to commit that crime—*i.e.*, an attempt to threaten—falls outside the elements clause. But, unlike Hobbs Act robbery, a criminal cannot commit murder by threat. Instead, the completed crime of murder *always* requires the use of physical force "because it is impossible to cause death without applying force that is capable of causing pain or physical injury." *Sanchez*, 940 F.3d at 534–35. Because the completed crime of murder has as an element the use of force, the *attempt* to commit murder has as an element the attempted use of force. As the Fourth Circuit explained in *Taylor* itself, "where a crime of violence requires the use of physical force . . . the corresponding attempt to commit that crime necessarily involves the attempted use of force." *United States v. Taylor*, 979 F.3d 203, 209 (4th Cir. 2020) *cert. granted*, 141 S. Ct. 2882 (2021), *and aff'd*, 596 U.S. ——, 142 S. Ct. 2015 (2022). *See also United States v. Baez-Martinez*, 950 F.3d 119, 132 (1st Cir. 2020) ("[I]f murder requires violent force because death results, then attempted murder does, too, because the defendant attempted to reach that result."); *United States v. Peeples*, 879 F.3d

---

[2] In so holding, *Taylor* overruled our decision in *United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018), which held that any attempt to commit a crime of violence *necessarily* qualifies as a crime of violence. 596 U.S., at ——, 142 S. Ct. at 2021.

19-14994            Opinion of the Court            21

282, 287 (8th Cir. 2018) ("an attempt to cause death would also re-
quire the use or attempted use of force").

Attempting to avoid this common-sense conclusion, Al-
varado-Linares suggests that the substantial step element of at-
tempted murder in Georgia can be satisfied by acts that do not
themselves involve the use, attempted use, or threatened use of
physical force. In support he cites several decisions by Georgia
courts affirming convictions for attempted murder where a defend-
ant engaged in murder-for-hire. *See, e.g.*, *Howell v. State*, 278
S.E.2d 43, 46–47 (Ga. App. 1981) (affirming defendant's conviction
for attempted murder where he met with someone he believed
was a professional hitman, gave him a description of the victim, the
victim's tag number, a map of her neighborhood, and five-hundred
dollars). In these decisions, the substantial step taken toward the
completed crime of murder involved one or more of the following
acts: contacting a potential hitman, identifying a victim, negotiat-
ing a price, or exchanging money. Alvarado-Linares argues that be-
cause these substantial steps do not involve actual, attempted, or
threatened force, that these decisions establish that Georgia at-
tempted murder does not involve the attempted use of force.

Alvarado-Linares is wrong. The elements clause defines the
"attempt" to use force against another person as a crime of vio-
lence, and the hornbook criminal-law definition of "attempt" is a
(1) substantial step plus (2) intent. *See, e.g.*, 2 W. LaFave, Substan-
tive Criminal Law § 11.4; Model Penal Code § 5.01 (1985). *See also*
*United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) ("as used

in the law for centuries, [attempt] encompasses both the overt act and intent elements"). Accordingly, when a crime has as an element a substantial step plus intent to use force against another person, that crime has as an element the "attempted use . . . of physical force against the person of another." *See* 18 U.S.C. § 924(c)(3)(A). Because convictions for attempted murder under Georgia and federal law require proof of a substantial step plus intent to use force, those attempt crimes are crimes of violence under the elements clause.

We believe that the conduct in the decisions cited by Alvarado-Linares (such as locating and negotiating with a hitman, exchanging money, etc.), which led to convictions for completed or attempted murder-for-hire, illustrates this point. As previously discussed, we have held that completed murder—whether by hire or through some other means—always requires the use of physical force. It is impossible to kill someone without using force. A criminal who contracts with a potential hitman—locating, hiring, meeting, paying him—is either using force (if the murder is carried out) or attempting to use force (if the plot fails). Whether successful or not, the criminal in a murder-for-hire plot is exerting or attempting to exert force against the victim "by and through concrete bodies," *Castleman*, 572 U.S. at 170–71, albeit not the criminal's own body. Because one cannot attempt Georgia or federal murder without attempting to use force, Alvarado-Linares was convicted of crimes of violence under the elements clause when he was convicted of VICAR attempted murder.

## D.

Finally, Alvarado-Linares argues that his VICAR murder and attempted murder convictions cannot qualify as crimes of violence because the government prosecuted him on an aiding and abetting theory. Again, we disagree. Our precedents establish that aiding and abetting offenses can qualify as crimes of violence under Section 924(c). One who aids and abets a crime of violence "necessarily commits a crime that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016) (internal quotation marks omitted) (holding that the defendant's conviction for aiding and abetting a Hobbs Act robbery was a "crime of violence" under Section 924(c)(3)(A)). This is because aiding and abetting "is not a separate federal crime, but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." Id. (quoting United States v. Sosa, 777 F.3d 1279, 1292 (11th Cir. 2015)). And one who "aids, abets, counsels, commands, induces or procures" the commission of an offense is punishable as a principal. Id. (quoting United States v. Williams, 334 F.3d 1228, 1232 (11th Cir. 2003)). Accordingly, even though Alvarado-Linares's VICAR murder and attempted murder convictions were premised on an aiding and abetting theory, they are nevertheless crimes of violence under Section 924(c).

## IV.    CONCLUSION

For these reasons, we hold that Alvarado-Linares's VICAR convictions (Counts Two, Four, Eight, and Ten), predicated on his commission of murder and attempted murder, qualify as crimes of violence under Section 924(c)'s elements clause. That means that his corresponding firearms convictions (Counts Three, Five, Nine, and Eleven) are still valid after *Davis*'s holding that the residual clause is unconstitutional. And that means that, after Alvarado-Linares completes his three concurrent life sentences, he will still have a consecutive eighty-five-year sentence left to serve.

We **AFFIRM** the district court's denial of Alvarado-Linares's Section 2255 motion.

NEWSOM, Circuit Judge, concurring:

I concur in the Court's decision and join its opinion in full. I write separately simply to ask whether the "categorical approach" to identifying "crime[s] of violence" has, to use a technical term of art, jumped the shark. This case, in particular, really makes me wonder.

Miguel Alvarado-Linares, a "local leader" of the notorious street gang MS-13, took part in at least two murders and another two attempted murders, all involving guns. *United States v. Alvarado-Linares*, 698 F. App'x 969, 971 (11th Cir. 2017) (per curiam). In one instance, he "directed and participated in the execution-style murder of a fellow gang member . . . who was suspected of being a police informant." *Id.* In a second, he pressured another MS-13 member into assassinating two rivals as the "price of being allowed to leave" the gang and followed in a separate car as the triggerman killed one victim and wounded the other. *Id.*

For his actions, Alvarado-Linares was indicted, convicted, and sentenced in federal court on two counts of "VICAR" murder and two counts of attempted VICAR murder—more on those shortly—as well as four corresponding counts of using a firearm in connection with "crime[s] of violence" within the meaning of 18 U.S.C. § 924(c). The question before us now, on appeal from the denial of Alvarado-Linares's § 2255 motion, is whether VICAR murder constitutes a "crime of violence."

In correctly holding that it does, the Court dutifully applies a version of the so-called "categorical approach."  To that end, the Court meticulously examines the constituent elements of the particular crimes of which Alvarado-Linares was convicted—VICAR murder and attempted VICAR murder, charged in this case by reference to underlying Georgia-law definitions and conceptions of "malice murder."  *See* Maj. Op. at 10–23.  In making that assessment, the Court hacks and hews its way through the weeds of statutory definitions and state-court caselaw.  So, for instance, the Court considers whether and under what circumstances causing another's death "indirect[ly]" can constitute the use of "physical force," whether the application of such force with "malice aforethought" is sufficiently directed "against the person . . . of another," whether the malice-aforethought standard is different enough from "mere recklessness," whether it matters if the malice is "express" or "implied," and whether the Georgia implied-malice cases involve the requisite evidence of intentionality.  *See* Maj. Op. at 13–18.

It seems to me that the Court is having to work way too hard to answer what, as it says, should be—and in the real world is—an exceedingly "simple question":  "[A]re murder and attempted murder crimes of violence?"  Maj. Op. at 2.  And to be clear, it's not *just* that we're talking about murder—although it certainly is that.  *See, e.g.*, *United States v. Begay*, 934 F.3d 1033, 1042 (9th Cir. 2019) (Smith, J., dissenting) ("MURDER in the second-degree is NOT a crime of violence??? . . . How can this be?"), *overruled*, 33 F.4th

1081 (9th Cir. 2022). And it's not *just* that Alvarado-Linares "directed and participated in" one "execution-style murder" and "directed" a second—although it certainly is that. It's that this case specifically involves *VICAR murder* and requires us to decide whether *VICAR murder* constitutes a "crime of violence."

So what exactly is VICAR murder? The acronym "VICAR" stands for "*Violent Crime* in Aid of Racketeering." To be clear, then, the question before us—with respect to which categorical-approach precedent requires so much toil—is whether an offense denominated as a "[v]iolent [c]rime" constitutes a "crime of violence." To ask the question is—or should be—to answer it. And while the offense's title nicely tees up the seeming obviousness of the conclusion that VICAR murder is a "crime of violence," there's more where that came from. As it turns out, the VICAR statute's *text* expressly equates its enumerated predicate offenses—murders, kidnappings, maimings, assaults, etc.—with "crime[s] of violence."

In relevant part, the VICAR statute provides as follows:

Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, *murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury* upon, or threatens to commit *a crime of violence* against any individual in violation of the laws of

any State or the United States, or attempts or con-
spires so to do, shall be punished . . . .

18 U.S.C. § 1959(a) (emphases added).

The VICAR statute thus separately criminalizes two catego-
ries of conduct.  In what I'll call the first clause, it prohibits per-
forming any of several specified actions:  "Whoever . . . murders,
kidnaps, maims, [or] assaults . . . ."  *Id.*  In the second, it prohibits
threatening, attempting, or conspiring to do the same:  "Whoever
. . . threatens to commit *a crime of violence* . . . or attempts or con-
spires so to do."  *Id.* (emphasis added).  To be sure, Congress could
have repeated the entire enumeration:  "Whoever . . . murders,
kidnaps, maims, [or] assaults . . . or threatens to murder, kidnap,
maim, [or] assault . . . ."  But it saw no need to do so.  Instead, it
simply employed the phrase "crime of violence" as a shorthand ref-
erence to the already-listed predicate acts.

Consequently, *the VICAR statute itself*—to say nothing of
its conspicuously suggestive title—indicates that VICAR offenses,
including most notably VICAR murder, are indeed "crime[s] of vi-
olence."  And that conclusion is only strengthened by the fact that
the VICAR statute and § 924(c) were enacted as neighboring provi-
sions of the very same piece of legislation, the Comprehensive
Crime Control Act of 1984.  *See* Pub. L. No. 98-473, §§ 1002(a),
1005(a), 98 Stat. 1837, 2137–39 (1984).  According to cardinal inter-
pretive principles, the phrase "crime of violence" is "presumed to
bear the same meaning throughout [that Act's] text."  Antonin

19-14994                  Newsom, J., Concurring                        5

Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170–73 (2012).

As others have noted, the categorical approach can sometimes lead to "unjust or absurd" results. *United States v. Valdivia-Flores*, 876 F.3d 1201, 1211 (9th Cir. 2017) (O'Scannlain, J., concurring). Today's result is entirely sensible, but the route required to reach it seems no less absurd. If ever there were a case that epitomized the categorical approach's "endless gauntlet of abstract legal questions," *United States v. Dr.*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring), this is it. It seems to me glaringly obvious that VICAR offenses—VICAR *murder* most prominently among them—are "crime[s] of violence" within the meaning of 18 U.S.C. § 924(c). The Court's painstaking-but-tedious effort to demonstrate that fact is a great credit to it, but a discredit to categorical-approach doctrine.