[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13500

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

THOMAS JAMES SHEELY, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cr-80113-DMM-1

_____

Before ROSENBAUM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Thomas Sheely appeals his conviction and 105-month sentence for possession of a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  On appeal, he argues that his conviction under § 922(g)(1) violates the Second Amendment in light of the Supreme Court's decision in *New York State Rifle and Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  He also asserts that the district court erroneously overruled his objection to the use of his prior state convictions for attempted robbery and manslaughter to support a base offense level that was six points higher than he contends it should have been, as those convictions don't count as "crimes of violence" as defined in U.S.S.G. § 4B1.2.

Under our prior-panel-precedent rule, we conclude that Sheely's conviction under § 922(g)(1) does not violate the Second Amendment, so we reject his challenge on that basis.  But we agree with Sheely that neither of the prior convictions the district court relied on in imposing the career-offender enhancement qualify as "crimes of violence" as U.S.S.G. § 4B1.2 defines the term.  So we vacate the sentence and remand for resentencing.

**I.**

As we've mentioned, Sheely contends that his conviction under § 922(g)(1) violates the Second Amendment after *Bruen*.  We review the constitutionality of a statute *de novo*.  *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).

The Second Amendment reads, "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Section 922(g) of Title 18 of the United States Code prohibits anyone who has been convicted of a crime punishable by more than one year of imprisonment from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(1).

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment right to bear arms presumptively "belongs to all Americans," but is not unlimited. 554 U.S. 570, 581, 626 (2008). The Supreme Court stated that, while it "[did] not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment, nothing in [the *Heller*] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.*

Following *Heller*, several courts of appeals adopted a two-step framework for assessing Second Amendment challenges: (1) determine whether the law regulates activity within the scope of the right to bear arms based on its original historical meaning; and (2) if so, apply means-end scrutiny to test the law's validity. *Bruen*, 597 U.S. at 17–18.

In *United States v. Rozier*, we relied on *Heller* in holding that § 922(g)(1) did not violate the Second Amendment, "even if a felon possesses a firearm purely for self-defense." 598 F.3d 768, 770 (11th Cir. 2010). The *Rozier* decision did not rely on means-end scrutiny to conclude that § 922(g)(1) was constitutional, and instead, it

recognized that prohibiting felons from possessing firearms was a "presumptively lawful longstanding prohibition." *Id.* We stated that *Heller* suggested that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* at 771. We concluded that Rozier's purpose for possessing a firearm, and the fact that the firearm was constrained to his home, were immaterial because felons as a class could be excluded from firearm possession. *Id.*

Then, in *Bruen*, the Supreme Court held that *Heller* does not support applying means-end scrutiny in the Second Amendment context. *Bruen*, 597 U.S. at 19. Under *Bruen*, a court must ask whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment. *Id.* at 17–18. If the regulation does govern such conduct, the court will uphold it if the government "affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of 'the right to keep and bear arms.'" *Id.* at 19. The Supreme Court in *Bruen*, as it did in *Heller*, referenced the Second Amendment rights of "law-abiding, responsible citizens." *Id.* at 26, 38 n.9, 70; *see Heller*, 554 U.S. at 625.

In *United States v. Dubois*, we rejected a defendant's Second Amendment challenge to § 922(g)(1). 94 F.4th 1284, 1291–93 (11th Cir. 2024). We noted that *Bruen*, like *Heller*, repeatedly described the right to bear arms as extending only to "law-abiding, responsible citizens." *Id.* at 1292–93. We then determined that *Bruen* did not abrogate its precedent in *Rozier* under the prior-panel-

precedent rule because the Supreme Court made it clear that *Heller* did not cast doubt on felon-in-possession prohibitions, and because the Court made it clear in *Bruen* that its holding was consistent with *Heller*. *Id.* at 1293. We noted that *Rozier* interpreted *Heller* as limiting the right to "law-abiding and qualified individuals," and as clearly excluding felons from those categories by referring to felon-in-possession bans as presumptively lawful. *Id.* We held that, because clearer instruction was required from the Supreme Court before we could reconsider § 922(g)(1)'s constitutionality, we were still bound by *Rozier*, and Dubois's challenge based on the Second Amendment therefore failed. *Id.*

The Supreme Court has not directly addressed the constitutionality of § 922(g)(1) since its decision in *Bruen*. But it recently applied the *Bruen* framework in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). In that case, the Supreme Court held that § 922(g)(8), which prohibits the possession of firearms by individuals subject to a domestic-violence restraining order, did not facially violate the Second Amendment because regulations prohibiting individuals who pose a credible threat of harm to others from misusing firearms are part of this country's historical tradition. *Rahimi*, 144 S. Ct. at 1898–902. The Supreme Court noted that courts have "misunderstood" the *Bruen* methodology and stated that the Second Amendment permitted not just regulations identical to those in existence in 1791, but also those regulations that are "consistent with the principles that underpin our regulatory tradition" and are "relevantly similar to laws that our tradition is understood to permit." *Id.* at 1897-98 (quotation marks omitted). The Supreme Court

noted that the right to bear arms "was never thought to sweep in-discriminately" and extensively detailed the historical tradition of firearm regulations, including the prohibition of classes of individuals from firearm ownership. *Id.* at 1897, 1899–902.

Ultimately, the Supreme Court held that § 922(g)(8) was constitutional as applied to Rahimi because the restraining order to which Rahimi was subject included a finding that he posed "a credible threat to the physical safety" of another, and the government provided "ample evidence" that the Second Amendment permitted "the disarmament of individuals who pose a credible threat to the physical safety of others." *Id.* at 1896–98.

Under the prior-panel-precedent rule, a prior panel's holding is binding on all subsequent panels unless and until the Supreme Court or this Court sitting *en banc* overrules or undermines it to the point of abrogation. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). "To constitute an overruling for the purposes of this prior panel precedent rule, the Supreme Court decision must be clearly on point." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quotation marks omitted). "In addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.* "The prior panel precedent rule applies regardless of whether the later panel believes the prior panel's opinion to be correct, and there is no exception to the rule where the prior panel failed to consider arguments raised before a

later panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).

Here, Sheely cannot show under our precedent that the district court plainly erred in convicting him under § 922(g)(1). As we've recounted, we originally held in *Rozier* that § 922(g)(1) does not violate the Second Amendment and confirmed in *Dubois* that *Bruen*, issued in the interim, did not abrogate *Rozier*. *Rozier*, 598 F.3d at 770-71; *Dubois*, 94 F.4th at 1293; *see generally Bruen*, 597 U.S. at 1. Nor is *Rahimi* clearly on point, as the Supreme Court in that case addressed a different section of § 922(g)—§ 922(g)(8). *See Rahimi*, 144 S. Ct. at 1902. And it abrogated neither *Rozier* or *Dubois*. Accordingly, our prior-panel-precedent rule forecloses Sheely's arguments as to the constitutionality of § 922(g)(1). *Kaley*, 579 F.3d at 1255.

## II.

Sheely asserts that his prior convictions for attempted robbery and manslaughter don't qualify as "crimes of violence" under the Sentencing Guidelines, so he should not have received the base offense level that U.S.S.G. § 2K2.1(a) prescribes. We agree.

We review the interpretation and application of the Sentencing Guidelines *de novo*. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (*en banc*). Accordingly, we "review *de novo* whether a defendant's prior conviction qualifies as a crime of violence under the Sentencing Guidelines." *United States v. Palomino Garcia*, 606 F.3d 1317, 1326 (11th Cir. 2010) (quotation marks omitted).

Under § 2K2.1(a) of the Sentencing Guidelines, a defendant who "committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence" is assigned a base offense level of 26.  U.S.S.G. § 2K2.1(a)(1).  The commentary to § 2K2.1 states that the definition of a "crime of violence" "has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2."  *Id.* comment. (n.1) (cross-referencing § 4B1.2).

Section § 4B1.2(a),[1] in turn, provides that a "crime of violence" is

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a

---

[1] Because the "elements clause" of U.S.S.G. § 4B1.2 and the elements clauses of 18 U.S.C. §§ 924(c) and 924(e) are "nearly identical," we have said that "the same analysis applies" to them.  *United States v. Bates*, 960 F.3d 1278, 1285 n.1 (11th Cir. 2020); *see United States v. Ochoa*, 941 F.3d 1074, 1107 (11th Cir. 2019) (because the clauses are "virtually identical, this Court looks to the Supreme Court's and our own decisions applying the [Armed Career Criminal Act] for guidance in considering whether an offense qualifies as a crime of violence under the Guidelines, and *vice versa*"); *United States v. Seabrooks*, 839 F.3d 1326, 1340 (11th Cir. 2016).

firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a).

And guideline commentary to § 4B1.2 says that the definition of "crime of violence" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, comment. (n.1). In other words, so long as a substantive offense qualifies as either a crime of violence or a controlled-substance offense in § 4B1.2, an attempt crime qualifies under Application Note 1.

That said, under our precedent, we do not consider the commentary's inclusion of attempts.

In *Kisor v. Wilkie*, the Supreme Court clarified when courts should defer to agency interpretations of ambiguous regulations. 588 U.S. 558, 563 (2019). It held that such deference is warranted only when the court has determined, "based on indicia like text, structure, history, and purpose, whether the regulation really has more than one reasonable meaning," and where the interpretation "is of the sort that Congress would want to receive deference." *Id*. at 589–90.

In *Dupree*, a district court concluded that a defendant's prior conviction for conspiring to possess with intent to distribute controlled substances was a predicate controlled-substance offense under the guidelines. *Dupree*, 57 F.4th at 1271–72. So it found that the defendant was a career offender. *Id*. On appeal, we applied *Kisor* and vacated the defendant's sentence, concluding that a

conspiracy conviction was not a "controlled substance offense" because the plain text of the guideline unambiguously excluded inchoate crimes. *Id.* at 1280.

In doing so, we also held that if a provision of the Sentencing Guidelines is unambiguous, then courts should not defer to the commentary. *Id.* at 1275. We found that the definition of "controlled substance offense" in U.S.S.G. § 4B1.2(b) for the career-offender provision of the Sentencing Guidelines was unambiguous, as it enumerated the offenses covered by the definition, and it excluded conspiracy, attempt, and other inchoate offenses. *Id.* at 1277-–78. As a result, we concluded that we should not consider the commentary in the application notes. *Id.* at 1279. We cited the elements clause of § 4B1.2(a) as an example of a section of the Sentencing Guidelines that includes attempt in its definition of "crime of violence" to show that the Sentencing Commission acts intentionally when it uses particular language in one section but omits it in another. *Id.* at 1278.

But in *United States v. Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a predicate crime of violence under § 924(c)(3)(A)'s "elements clause." 596 U.S. 845, 848–52 (2022). And it did so, even though, like the elements clause of Section 4B1.2(a), the elements clause of § 924(c) provides that a crime of violence is a felony offense that "has as an element the use, *attempted use*, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added).

At the outset, the Court noted that, under the applicable categorical approach, the facts of a particular defendant's case are immaterial, because the "only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.* at 850.

The Court then explained that, to prove attempted Hobbs Act robbery, the government must show that the defendant intended to unlawfully take or obtain personal property using actual or threatened force and completed a "substantial step" toward that end. *Id.* at 850-51. But the Court noted that, while the government would have to show that the defendant took an "unequivocal" and "significant" step toward committing robbery, the government need not show that the defendant actually used, attempted to use, or even threatened to use force, as required by § 924(c). *Id.* at 851. The Court stressed that "an intention to take property by force or threat, along with a substantial step toward achieving that object, . . . is just that, no more." *Id.* In a hypothetical, the Court stated that a defendant apprehended before reaching his robbery victim could be convicted of attempted Hobbs Act robbery, even though he had not yet engaged in threatening conduct, so long as the government had other evidence of his intent and a substantial step. *Id.* at 851-52. So the Court held that attempted Hobbs Act robbery was not a crime of violence under the text of § 924(c)(3)(A). *Id.* at 852. "We read *Taylor* to hold that, where a crime may be committed by the threatened use of force, an attempt to that crime—i.e., an attempt

to threaten—falls outside the elements clause." *Alvarado-Linares v. United States*, 44 F.4th 1334, 1346 (11th Cir. 2022).

In so holding, the Supreme Court rejected the government's argument that because a completed Hobbs Act robbery qualifies as a crime of violence, an attempted Hobbs Act robbery must qualify as well. *Id.* at 853 (citing *United States v. St. Hubert*, 909 F.3d 335, 352-53 (11th Cir. 2018)). The Court emphasized that the "elements clause does not ask whether the defendant committed a crime of violence or attempted to commit one," but "asks whether the defendant did commit a crime of violence." *Id.* (emphasis in original). The Court concluded that, had Congress intended the elements clause to encompass attempted crimes of violence, it could have explicitly included attempt in its definition. *Id.*

Because the "elements clause" of U.S.S.G. § 4B1.2 and the elements clauses of 18 U.S.C. §§ 924(c) and 924(e) are "nearly identical," we have said that "the same analysis applies" to them. *United States v. Bates*, 960 F.3d 1278, 1285 n.1 (11th Cir. 2020); *see United States v. Ochoa*, 941 F.3d 1074, 1107 (11th Cir. 2019) (because the clauses are "virtually identical, this Court looks to the Supreme Court's and our own decisions applying the [Armed Career Criminal Act] for guidance in considering whether an offense qualifies as a crime of violence under the Guidelines, and *vice versa*"); *United States v. Seabrooks*, 839 F.3d 1326, 1340 (11th Cir. 2016).

So under *Taylor*, the facts that one of Sheely's prior convictions is attempted robbery and § 4B1.2(a)'s elements clause uses the phrase "attempted use" in its definition of "crime of violence" do

not mean that Florida attempted robbery qualifies as a crime of violence.

Rather, we must consider the elements of attempted robbery. Under Florida law, robbery is defined as follows:

> the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Fla. Stat. § 812.13(1).

Florida's attempt statute states that "[a] person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt." *Id.* § 777.04(1).

To support a conviction for attempted robbery under Florida law, "the State must show that the accused formed the intent to take the victim's property and committed some overt act to accomplish that goal." *Fournier v. State*, 827 So. 2d 399, 400–01 (Fla. Dist. Ct. App. 2002). "The overt act necessary to fulfill the requirements of attempted robbery, or an attempt to commit a crime, must be adapted to effect the intent to commit the crime; it must be carried beyond mere preparation, but it must fall short of

executing the ultimate design." *Mercer v. State*, 347 So. 2d 733, 734 (Fla. Dist. Ct. App. 1977).

Florida's attempted-robbery crime, like attempted Hobbs Act robbery, does not categorically require a defendant to have used, attempted to use, or threatened to use force. Instead, like attempted Hobbs Act robbery, one may commit Florida attempted robbery by attempting to threaten alone. So, under *Taylor*, Florida attempted robbery does not qualify as a crime of violence.

To be sure, in *United States v. Lockley*, we held that Florida attempted robbery was a crime of violence within the meaning of § 4B1.2(a). 632 F.3d 1238, 1246 (11th Cir. 2011). We held that robbery under Fla. Stat. § 812.13(1) categorically qualified as a crime of violence under the enumerated crimes clause because it met the generic definition of robbery. *Id.* at 1242-45. And we concluded that robbery under Fla. Stat. § 812.13(1) also qualified as a crime of violence under the elements clause because it "requires either the use of force, violence, a threat of imminent force or violence coupled with apparent ability, or some act that puts the victim in fear of death or great bodily harm." *Id.* at 1245.

In reaching this conclusion, we said that, "because the commentary explicitly states that the attempt to commit a 'crime of violence' is itself a 'crime of violence,' Lockley's attempted robbery conviction categorically qualifie[d] under the elements clause as a predicate for the career offender enhancement." *Id.* Thus, we concluded that a prior conviction qualifies as a crime of violence if the defendant was convicted of attempting to commit an enumerated

offense or if "the use, attempted use, or threatened use of physical force against another was an element of the offense." *Id.* at 1241.

But *Taylor* and *Dupree* have abrogated our reasoning in *Lockley*. Under *Taylor*, attempted robbery doesn't qualify under the elements clause of § 4B1.2(a) because, like attempted Hobbs Act robbery, it does not require the use, attempted use, or threatened use of force against the person of another, and because the enumerated-crimes clause unambiguously covers only completed offenses. *See Taylor*, 596 U.S. at 850-51; *Dupree*, 57 F.4th at 1275; *Fournier*, 827 So. 2d at 400-01; U.S.S.G. § 4B1.2(a); Fla. Stat. §§ 777.04(1), 812.13(1). And under *Dupree*, we don't look to the commentary to further define "crime of violence" because the definition in the guideline itself unambiguously does not include attempted robbery.

Sheely's Florida manslaughter conviction fares no better.

The Florida statute governing manslaughter under which Sheely was previously convicted defined the offense as "[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification . . . and in cases in which such killing shall not be excusable homicide or murder." Fla. Stat. § 782.07. Florida's culpable-negligence standard is defined as "consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury." *In re Standard Jury Instructions in Crim. Cases-Rep. 2017-06*, 236 So.3d 282, 317 (Fla. 2018). This is "a course of conduct showing reckless disregard of

human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard for the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights." *Id.*

Sheely's prior Florida conviction for manslaughter does not qualify as a crime of violence for purposes of § 4B1.2(a) because it can be committed recklessly. *Dupree*, 57 F.4th at 1277-78; Fla. Stat. § 782.07; *In re Standard Jury Instructions*, 236 So. 3d at 317. "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Borden v. United States*, 593 U.S. 420, 429 (2021). "Reckless conduct is not aimed in that prescribed manner." *Id.* "Offenses with a mens rea of recklessness do not qualify as violent felonies under ACCA." *Id.*

We do not express an opinion on the contested question of Sheely's additional prior conviction for Florida felony battery, as the district court's erroneous reliance on his manslaughter and attempted-robbery convictions for purposes of enhancing his sentence require vacatur and remand for resentencing, regardless.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**