PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1181

_____

UNITED STATES OF AMERICA

v.

JAMES GARNER,
a/k/a ABD AL RAHMAN

　　　　　　　　　　JAMES GARNER,

　　　　　　　　　　　　Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-15-cr-00088-001)
District Judge: Honorable Robert F. Kelly

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 7, 2019

Before: AMBRO, SHWARTZ,
and FUENTES, Circuit Judges

(Opinion filed:  February 8, 2019)

Kenneth C. Edelin, Jr.
1441 Sansom Street
Philadelphia, PA  19102

      Counsel for Appellant

William M. McSwain
  United States Attorney
Robert A. Zauzmer
  Assistant United States Attorney, Chief of Appeals
Joseph A. LaBar
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106

      Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

A grand jury in the Eastern District of Pennsylvania indicted James Garner on charges of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371, attempted bank robbery in violation of 18 U.S.C. § 2113(a), and possession of a firearm in furtherance of a crime of violence and aiding and abetting that crime in violation of 18 U.S.C. §§ 2 & 924(c)(1).  A jury trial resulted in conviction on all charges, and the District Court sentenced Garner to a total of 101 months' imprisonment.  (His co-defendant Ruben

Marshall, who had not been charged with attempted bank robbery, was acquitted of all charges.) Garner now appeals his conviction, arguing the evidence at trial was insufficient to establish either conspiracy or an attempt to commit armed bank robbery, and therefore the firearm charge fails as well. His principal claim is that the chief witness against him was not credible, and he offers an alternate interpretation of the evidence at trial. But we do not draw inferences in the defendant's favor when reviewing for sufficiency of the evidence, and thus affirm.

We review sufficiency of the evidence "in the light most favorable to the prosecution" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424–25 (3d Cir. 2013) (*en banc*) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). In so doing, we must uphold the jury's verdict unless it "fall[s] below the threshold of bare rationality." *Caraballo-Rodriguez*, 726 F.3d at 431 (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)). "Reversing the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges." *Id*. at 432.

Viewed in this light, the evidence at trial showed the following. On February 6, 2015, Garner approached a man called Saber Saber after prayers concluded at their mosque with a "business opportunity" to be his getaway driver for a robbery of Apex Bank. Garner went back inside the mosque to give Saber time to consider the offer. The latter immediately went to his car and called FBI Special Agent Joshua Reed, for whom he acted as an informant. The call went to voicemail, so Saber placed his phone in the cupholder, hoping to capture his conversation with Garner on Agent Reed's voicemail. Garner

3

left the mosque and entered Saber's car to finish their conversation.

Later that day Saber met with Agent Reed and agreed to participate in the latter's investigation of Garner. They made a recorded call to him to further discuss the robbery. On another recorded call made February 9, Garner instructed Saber to surveil Apex Bank, and once that was completed, they would meet with a third individual, Ruben Marshall, to draw up a plan. Saber did as Garner instructed and later met with Garner and Marshall to plan the robbery.

Saber and Garner had several more recorded phone calls between February 10 and 12 outlining the robbery. On the morning of February 12—the day before the planned robbery—Saber arrived to pick Garner up in his car. Once Garner was inside the car, the FBI approached and arrested Garner and staged an arrest of Saber. The FBI found on Garner's person 17 small packets of crack cocaine, and in Saber's car a backpack not present before Garner entered. The backpack contained ski masks, a loaded gun, gloves, two-way radios, and ammunition.

To prevail on a conspiracy charge, the Government must prove beyond a reasonable doubt that there was "(1) a unity of purpose between the alleged conspirators[,] (2) an intent to achieve a common goal[,] and (3) an agreement to work together toward that goal." *United States v. Pressler*, 256 F.3d 144, 147 (3d Cir. 2001). Each of the elements may be proven "entirely by circumstantial evidence" so long as "the inferences drawn . . . have a logical and convincing connection to the facts established." *United States v. Applewhaite*, 195 F.3d 679, 684 (3d Cir. 1999) (quoting *United States v. Casper*, 956 F.2d 416, 422 (3d Cir. 1992)).

4

Garner argues that there was no "unity of purpose" between himself and Saber, as he was merely "conning" Saber into believing he (Garner) intended to rob Apex Bank. Appellant's Br. at 28. But this is irrelevant. The charged conspiracy was not between Garner and Saber, but between Garner and Marshall. *See* Indictment as to James Garner, Doc. #11 at 1, *United States v. Garner*, No. 2:15-cr-00088-001 (E.D. Pa. Mar. 10, 2015). Indeed, merely conspiring with Saber, a government informant, would not make Garner criminally liable. This is the rule in other Circuits, *see, e.g.*, *United States v. Corson*, 579 F.3d 804, 811 (7th Cir. 2009); *United States v. Barboa*, 777 F.2d 1420, 1422, 1422 n.1 (10th Cir. 1985) (collecting cases), and we adopt it as well. Nor was the jury required to credit his alternate interpretation of the facts.

Garner further contends there could not have been a conspiracy because details about the planned robbery—including both the date on which it would occur and potentially also which bank would be robbed—were not final prior to Garner's arrest. Appellant's Br. at 26. But his discussions with Marshall, as well as with Saber, about that robbery all centered on Apex Bank. Garner instructed Saber to surveil Apex, and, when Saber reported back, the three men discussed in detail their plan to rob it. J.A. at 163–177; Supp. App. at 8–17, 29–30. This was enough to support the conspiracy charge.

To prevail on a charge of attempted bank robbery, the Government had to prove that (1) Garner had the requisite intent to commit armed bank robbery; and (2) he "performed an act amounting to a 'substantial step' toward the commission of that crime." *United States v. Hsu*, 155 F.3d 189, 202 (3d Cir. 1998); *see also* Model Penal Code § 5.01(1)(c). He contends the evidence did not show any such substantial step, essentially because there were other necessary steps toward preparing the robbery he had not yet taken, such as acquiring a car. But a defendant may commit an attempt even where he

5

stops short of "the last act necessary" for the actual commission of the crime. *United States v. Hayward*, 359 F.3d 631, 644 (3d Cir. 2004) (Fuentes, J., concurring in part and dissenting in part); *see also United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003). Here Garner engaged in numerous, and substantial, steps toward robbing Apex Bank, including sending Saber to surveil the location and gathering tools for the robbery. (Garner disputes the credibility of the testimony suggesting that he provided the bag of tools seized during his arrest, but the jury was not required to agree.) Sufficient evidence thus backed the attempt charge.

Finally, Garner's sole argument as to the charge under 18 U.S.C. § 924(c) is that he cannot have possessed a firearm in furtherance of a crime of violence if he did not actually commit the underlying crime. But because his challenges to the conspiracy and attempt charges fail, his challenge to the § 924(c) charge fails as well.

Thus we affirm.