[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11252

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHN ARMSTRONG, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cr-00224-WWB-EJK-1

_____

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

John Armstrong, Jr., appeals his convictions for three counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). In 2021, we affirmed Armstrong's convictions. But after we issued our previous opinion, the Supreme Court handed down its decision in *United States v. Taylor*, 596 U.S. 845 (2022). Following *Taylor*, the Supreme Court granted Armstrong certiorari, vacated our 2021 opinion, and remanded the case for reconsideration in light of *Taylor*. Upon remand, this Court instructed the parties to file supplemental briefs addressing *Taylor*. After careful consideration of the parties' arguments and with the benefit of oral argument, we affirm.

## I.    FACTUAL & PROCEDURAL BACKGROUND

In 2020, a grand jury returned a 15-count indictment against Armstrong and two codefendants. Armstrong was named in Counts 1 to 4, 9 to 13, and 15. In those counts, Armstrong was charged with: one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) and (b) (Count 1); one count of bank robbery in violation of 18 U.S.C. § 2113(a) (Count 3); one count of aiding and abetting attempted bank robbery in violation of § 2113(a) (Count 9); one count of aiding and abetting bank robbery (Count 11); four counts of using, carrying, and brandishing a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 2, 4, 10, 12—relating to Counts 1, 3, 9, and 11, respectively); one count of felon-in-possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 13); and one count of possession

of cocaine in violation of 21 U.S.C. § 841(b)(1)(C) (Count 15). Armstrong pled guilty to Counts 1, 3, 4, and 9–12, and the government dismissed Counts 2, 13, and 15. Armstrong's PSI calculated his guideline range as 135 to 168 months' imprisonment for Count 1 (Hobbs Act robbery), Count 3 (bank robbery), Count 9 (attempted bank robbery), and Count 11 (bank robbery), while the sentences for Counts 4, 10, and 12 (the three § 924(c) offenses) would each be the minimum terms required by statute. Each of those § 924(c) convictions carried a mandatory seven-year minimum term (and a life-sentence maximum term), all to run consecutively to any other term, under the statute.

Before sentencing, Armstrong argued, for the first time, that § 924(c) is unconstitutionally void for vagueness. He challenged the categorical approach to classifying "crimes of violence," in particular whether bank robbery under § 2113(a) can be considered a categorical crime of violence because that crime can be committed by non-violent means, such as extortion. In response, the government argued that *United States v. Davis*, 139 S. Ct. 2319 (2019), did not invalidate the elements clause of § 924(c)(3) and that binding Eleventh Circuit precedent holds that federal bank robbery is a crime of violence under the elements clause. Because bank robbery is a categorical crime of violence in this Circuit under the elements clause, the government contended that each of Armstrong's § 924(c) convictions was properly supported by a predicate crime of violence. At sentencing, the district court accepted the government's position and rejected Armstrong's, agreeing that federal bank robbery is a crime of violence under this Circuit's binding

precedents.    The district court sentenced Armstrong to 420 months' imprisonment, comprising 168 months for each of Counts 1, 3, 9, and 11, running concurrently, and 84 months for each of Counts 4, 10, and 12, running consecutively to all other terms. The district court also imposed a five-year period of supervised release.

Armstrong timely appealed after his sentencing. He argued that his convictions and sentences for Counts 4, 10, and 12 (the three § 924(c) offenses) were invalid because the predicate offenses underlying all three of those charges (violations of § 2113(a)), can be committed without violence—i.e., by either intimidation or extortion—thereby rendering the "crime of violence" definition unconstitutionally vague. Armstrong's argument depended heavily on the Supreme Court's decision in *Davis*, where the Court held that the "residual clause" in § 924(c)(3)(B) was unconstitutionally vague. First, Armstrong argued that because *Davis* rejected a categorical approach to assessing crimes under the residual clause, we should likewise reject the same categorical approach to the elements clause. Second, Armstrong also contended (without elaboration) that *Davis* abrogated this Court's decision in *In re Sams*, 830 F.3d 1234, 1239 (11th Cir. 2016), where we held that "a bank robbery conviction under § 2113(a) by force and violence or by intimidation qualifies as a crime of violence under the § 924(c)(3)(A) use-of-force clause." Third, Armstrong pointed to various cases holding that Hobbs Act robbery cannot be a predicate offense for a § 924(c) conviction and asked us to reach the same conclusion with respect to the bank robbery statute, § 2113(a).

After considering these arguments, we affirmed Armstrong's convictions for Counts 4, 10, and 12, citing our binding precedent in *Sams*. *United States v. Armstrong*, Case No. 21-11252, 2021 WL 5919822, at *1 (11th Cir. 2021). In that opinion, we explained that bank robbery under § 2113(a), including bank robbery committed "by intimidation," is a categorical crime of violence under § 924(c)(3)(A)'s use-of-force clause—which *Davis* left untouched—and reiterated that this Court's decision in *Sams* was based on the reasoning that "a taking 'by force and violence' entails the use of physical force and a taking 'by intimidation' involves the threat to use such force." *Id.* at *2 (quoting *Sams*, 830 F.3d at 1239 (alterations adopted)). As for Count 10, Armstrong's § 924(c) conviction arising from an attempted bank robbery, we relied on a number of our binding cases for the proposition that attempting to commit a crime of violence or aiding and abetting a crime of violence also qualifies as a crime of violence for purposes of § 924(c)(3)(A)'s use-of-force clause. *Id.* We cited, for example, *Steiner v. United States*, 940 F.3d 1282, 1293 (11th Cir. 2019), where we held that aiding and abetting carjacking is a crime of violence under the elements clause of § 924(c)(3)(A), and *United States v. St. Hubert*, 909 F.3d 335, 351–52 (11th Cir. 2018), where we held that attempted Hobbs Act robbery qualifies as a crime of violence under the elements clause of § 924(c)(3)(A). *Id.* In line with those binding precedents, we held that because bank robbery under § 2113 is a categorical crime of violence under the elements clause, attempted bank robbery and aiding and abetting bank robbery are, likewise, categorical crimes of violence. *Id.* For those reasons, we affirmed

Armstrong's convictions.  *Id.*  Armstrong subsequently petitioned for certiorari of our decision to the Supreme Court.

Six months after we issued our previous opinion, the Supreme Court handed down its decision in *United States v. Taylor*, 596 U.S. 845 (2022), abrogating *St. Hubert*.  In *Taylor*, the Supreme Court resolved a circuit split and held that attempted Hobbs Act robbery is not a predicate crime of violence under § 924(c)(3)(A)'s elements clause.  *Id.* at 852.  As the outset, the Court reiterated that when taking a categorical approach, "[t]he only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."  *Id.* at 850.  From there, the Court turned to the elements of a *completed* Hobbs Act robbery: "unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force."  *Id.* (quoting § 1951(b)).  To prove an *attempted* Hobbs Act robbery, therefore, the government must necessarily prove "two things: (1) [t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end."  *Id.* at 851.  That second prong—the "substantial step"—became the pivotal question.  And, of it, the Court determined that "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property."  *Id.*  To illustrate, the Court provided the following hypothetical:

> Suppose Adam tells a friend that he is planning to rob a particular store on a particular date. He then sets about researching the business's security measures, layout, and the time of day when its cash registers are at their fullest. He buys a ski mask, plots his escape route, and recruits his brother to drive the getaway car. Finally, he drafts a note—"Your money or your life"—that he plans to pass to the cashier. The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response. When the day finally comes and Adam crosses the threshold into the store, the police immediately arrest him. It turns out Adam's friend tipped them off.

*Id*. at 851–52. On those facts, the Court said, "[t]here is little question the government could win a lawful conviction against Adam for attempted Hobbs Act robbery." *Id*. at 852. But, "at the same time," the Court continued, "this example helps show why attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause." *Id*. "Adam did not 'use' physical force. He did not 'attempt' to use such force . . . [a]nd he never even got to the point of threatening the use of force against anyone or anything," even though he intended and attempted to make such a threat. *Id*. "Simply put," the Court concluded, "no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force." *Id*. Accordingly, Taylor's § 924(c)(3)(A) conviction could not stand. *Id*. at 860.

Following *Taylor*, the Supreme Court granted Armstrong certiorari, vacated our 2021 opinion, and remanded the case for

reconsideration in light of *Taylor*. This Court instructed the parties to file supplemental briefs addressing *Taylor*.

## II.    STANDARD OF REVIEW

We review questions of constitutional law *de novo*. *United States v. Whatley*, 719 F.3d 1206, 1213 (11th Cir. 2013). We also review *de novo* whether an offense is a crime of violence under § 924(c). *United States v. McGuire*, 706 F.3d 1333, 1336 (11th Cir. 2013).

## III.    ANALYSIS

In his supplemental brief, Armstrong raises one central argument against his § 924(c) convictions—that neither bank robbery by extortion nor bank robbery by intimidation requires the government to always prove, as an element of the offense, the use, attempted use, or threatened use of force. For this reason, Armstrong asserts, offenses committed under § 2113(a) do not qualify categorically as crimes of violence under Section 924(c). As to Count 10 (which related to the underlying count of aiding and abetting attempted bank robbery), Armstrong adds one more contention—that the conviction must be reversed because the government did not have to prove anything more than mere intent to commit the robbery in order to fulfill the "substantial step" requirement. We address these issues in turn.

### A.  18 U.S.C. § 2113(a) is a Divisible Statute

We have previously held that "a bank robbery conviction under § 2113(a) by force and violence or by intimidation qualifies as a

crime of violence under the § 924(c)(3)(A) use-of-force clause." *Sams*, 830 F.3d at 1239. In that case, however, we did not decide whether § 2113(a) is divisible between its robbery and extortion provisions.[1] *See id.* at 1238–39. To determine whether Armstrong's predicate convictions are crimes of violence under § 924(c)(3)(A), therefore, we must decide, as a matter of first impression in this Circuit, whether that statute is divisible or indivisible.

An indivisible statute is one which "sets out a single (or 'indivisible') set of elements to define a single crime," even though it may also spell out "various factual ways of committing some component of the offense." *Mathis v. United States*, 579 U.S. 500, 504, 506 (2016). When faced with an indivisible statute, we employ the categorical approach to determine whether the offense is a crime of violence. *See Alvarado-Linares v. United States*, 44 F.4th 1334, 1342 (11th Cir. 2022). That is, we ask "whether the *elements* of the predicate offense . . . denote a 'crime of violence[,]" and we "do not look to the particular facts of the defendant's conduct." *Id.* (citing *United States v. Bates*, 960 F.3d 1278, 1286 (11th Cir. 2020)). A

---

[1] Throughout *Sams*, we discussed bank robbery without any reference to extortion as a means of commission. In particular, we said that "bank robbery, in violation of § 2113(a), . . . requires that the defendant take the property of a bank 'by force and violence, or by intimidation.'" *Sams*, 830 F.3d at 1238 (quoting § 2113(a)). This language suggests that we assumed without deciding that bank robbery and bank extortion are two separate crimes. But "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925). So we now make explicit what we previously only presumed.

divisible statute, on the other hand, "may list elements in the alternative, and thereby define multiple crimes." *Mathis*, 579 U.S. at 505. When parsing a divisible statute, we apply the modified categorical approach to determine whether the defendant committed a crime of violence. *Alvarado-Linares*, 44 F.4th at 1342. Under the modified categorical approach, we look beyond the elements enumerated in the statute to a limited set of documents[2]—the indictment, jury instructions, plea agreement, and plea colloquy—to determine which specific crime, comprising which elements, the defendant committed. *Id.*; *see also, e.g.*, *King v. United States*, 965 F.3d 60, 70–71 (1st Cir. 2020) (applying the modified categorical approach to determine whether bank robbery in violation of § 2113(a) is a crime of violence under § 924(c)); *United States v. Runyon*, 994 F.3d 192, 200–03 (4th Cir. 2021) (applying the modified categorical approach to determine whether conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958(a) is a crime of violence under § 924(c)).

When we face a disjunctive statute—like § 2113(a)—we must first "determine whether its listed items are elements or means." *Mathis*, 579 U.S. at 517. Armstrong assumes § 2113(a) is indivisible and argues that, under that statute, "robbery may be committed by force and violence, or by intimidation or extortion," the latter two means not requiring any element of violence. The

---

[2] These documents are known as *Shepard* documents and are records related to a defendant's prior convictions, including charging documents, plea agreements, plea-colloquy transcripts, and other comparable judicial records. *Shepard v. United States*, 544 U.S. 16, 26 (2005).

government urges us to reject this approach because robbery and extortion are two distinct crimes, rendering § 2113(a) a divisible statute. We agree with the government and hold that § 2113(a) is a divisible statute and that § 2113(a)'s first paragraph criminalizes the two separate offenses of bank robbery, on the one hand, and bank extortion, on the other.[3]

As we have explained, to determine whether the robbery and extortion clauses represent elements or means, we begin with the text of the statute. *See Mathis*, 579 U.S. at 518. The text reads, in relevant part, as follows:

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;
>
> . . .
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). Our colleagues on the First Circuit have aptly dissected the text, explaining that "the fact that the language 'or obtains or attempts to obtain' immediately precedes the phrase 'by

---

[3] The second paragraph of § 2113(a), which prohibits bank burglary, is tangential to our discussion in this case, and this opinion should not be read to announce any new holding about the bank burglary portion of the statute.

extortion' (as opposed to 'takes, or attempts to take,' which relates to the 'by force or violence' and 'intimidation') . . . suggests that extortion is not an alternative means of commission." *King*, 965 F.3d at 68. We agree that a plain reading of the text supports the conclusion that robbery and extortion are alternate elements—amounting to separate crimes—not alternate means of committing one crime. The statute's distinction between "taking" and "obtaining" reflects the fundamental division between robbery and extortion, namely, that robbery involves taking possession of the property of another *against his will* while extortion involves taking possession of the property of another *with consent*—albeit grudging or coerced. *See Ocasio v. United States*, 578 U.S. 282, 297 (2016) (explaining the difference between Hobbs Act robbery and Hobbs Act extortion). This is not new territory for this Court. Indeed, we have opined at length on the common-law origins of robbery and extortion, explaining that our concept of extortion was developed to "plug a loophole in the robbery law by covering sundry threats which will not do for robbery." *United States v. Harris*, 916 F.3d 948, 955 (11th Cir. 2019). We noted that while "'both crimes equally require that the defendant's threats induce the victim to give up his property, something which he would not otherwise have done,'" the crime of "robbery must be against the victim's will while extortion must be with his consent." *Id.* (quoting Wayne R. LaFave, *Criminal Law* § 20.4, at 1336 (6th ed. 2017)). The prosecution must prove as elements of each offense, therefore, that a defendant either violated the victim's will (robbery) or secured the victim's consent (extortion). In sum, the plain text of § 2113(a)

demonstrates that the statute is divisible and criminalizes two distinct acts—robbery and extortion—each of which can be committed through various factual means.

The statutory history of § 2113(a) supports our conclusion. In 1986, Congress amended that statute—which previously prohibited only robbery by force, violence, or intimidation—by adding the "extortion" language, thereby resolving a circuit split as to whether extortion of federally insured banks was properly prosecuted under the Hobbs Act, 18 U.S.C. § 1951, or under the bank robbery statute, § 2113(a). *See* H.R. Rep. 99-797, *33* (1986) ("Accordingly, section 51 amends 18 U.S.C. 2113(a) expressly to cover crimes of extortion directed at federally insured banks. The Committee intends to overrule those cases holding that only the Hobbs Act applies, and those cases holding that both the Hobbs Act and 18 U.S.C. 2113(a) apply, in order to make 18 U.S.C. 2113(a) the exclusive provision for prosecuting bank extortion."). That Congress saw fit to expressly add text to cover "crimes of extortion" confirms our conclusion that bank extortion is a separate crime and not merely a means of committing bank robbery. Courts parsing the language of the Hobbs Act have similarly tracked Congress's distinction between robbery and extortion when determining whether that statute is divisible. The Hobbs Act, § 1951, criminalizes obstructing, delaying, or affecting commerce or the movement of articles in commerce "by robbery or extortion," and courts across the country—including our highest court—have long held that Hobbs Act robbery and Hobbs Act extortion are two separate and distinct crimes, enumerated in a divisible statute. *See, e.g., Ocasio*, 578 U.S.

14                    Opinion of the Court                    21-11252

at 292 (referring to "the substantive offense of Hobbs Act extortion"); *Evans v. United States*, 504 U.S. 255, 268 (1992) (referring to "the offense of extortion 'under color of official right'" under the Hobbs Act); *St. Hubert*, 909 F.3d at 348, *abrogated on other grounds by Taylor*, 596 U.S. 845 ("We agree with the Sixth Circuit's conclusion that (1) the Hobbs Act is a divisible statute that sets out multiple crimes, and (2) robbery and extortion are distinct offenses, not merely alternative means of violating § 1951(a)."); *United States v. Chappelle*, 41 F.4th 102, 110 (2d Cir. 2022) (analyzing the offenses of "Hobbs Act robbery" as distinct from extortion); *United States v. Gooch*, 850 F.3d 285, 291 (6th Cir. 2017) ("[W]e conclude that § 1951 is a divisible statute setting out separate crimes of Hobbs Act robbery and Hobbs Act extortion."); *United States v. O'Connor*, 874 F.3d 1147, 1150 (10th Cir. 2017) ("Mr. O'Connor was convicted of Hobbs Act robbery, not Hobbs Act extortion.").

We note that we do not stand alone in holding that § 2113(a) is divisible as to bank robbery and bank extortion. *See King*, 965 F.3d at 69 ("Therefore, we do not agree with King that the robbery and extortion clauses denote alternative means of committing a single, indivisible offense. Rather, it is clear from the relevant text as well as the structure and context of the 1986 statutory amendment, that robbery and extortion under § 2113(a) are alternative elements of distinct offenses." (internal quotation omitted)); *United States v. Evans*, 924 F.3d 21, 28 (2d Cir. 2019) ("First, we need not address Evans's argument regarding bank robbery 'by extortion' because we agree with the Ninth Circuit that § 2113(a) contains at least two separate offenses, bank robbery and bank extortion.

Because Evans was convicted of bank *robbery*—indeed Congress amended the statute *after* his conviction to include bank extortion . . . we need not decide whether bank extortion qualifies as a crime of violence." (internal quotation and citation omitted)); *United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2018) ("[Section] 2113(a) does not contain one indivisible offense.  Instead, it contains at least two separate offenses, bank robbery and bank extortion.").

For these reasons, we conclude that § 2113(a) is a divisible statute that prohibits two distinct offenses: bank robbery and bank extortion.  Armstrong was convicted of the former offense, bank robbery by force or violence, or by intimidation, and of an attempt to do the same.  Armstrong's argument that extortion is a non-violent means of committing bank robbery is, therefore, unavailing, and we proceed with a modified categorical approach to determine whether Armstrong's bank robbery offenses are crimes of violence for § 924(c) purposes.  *See Alvarado-Linares*, 44 F.4th at 1342 ("But when a statute is divisible—meaning it defines multiple potential crimes—we instead apply the modified categorical approach."); *see also, e.g.*, *King*, 965 F.3d at 70–71; *Runyon*, 994 F.3d at 200–01.

## B.  Counts 4 and 12

Under the modified categorical approach, we "may look beyond the elements of the predicate offense to a limited class of documents—including the indictment, jury instructions, plea agreement, and plea colloquy—to determine which specific crime, with which elements, a defendant was convicted of." *Alvarado-Linares*, 44 F.4th at 1342; *see also*, *King*, 965 F.3d at 70.  Here, Armstrong's

indictment, plea agreement, and plea colloquy tell us that the elements of his predicate crimes in Counts 3 and 11 are (1) "the defendant knowingly took money possessed by a federally insured bank from or in the presence of the person described in the Second Superseding Indictment," and (2) "the defendant did so by intimidation." Armstrong's challenge to both convictions thus fails because *Taylor* did not abrogate our prior cases holding that both bank robbery and aiding and abetting bank robbery are "crimes of violence," even when committed through intimidation.

In *Sams*, this Court expressly held that "a bank robbery conviction under § 2113(a) by force and violence *or by intimidation* qualifies as a crime of violence under the § 924(c)(3)(A) use-of-force clause." *Sams*, 830 F.3d at 1239 (emphasis added); *see also United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) ("Under section 2113(a), 'intimidation occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts.'" (quoting *United States v. Cornillie,* 92 F.3d 1108, 1110 (11th Cir. 1996) (per curiam))). Under our prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). And there is nothing in *Taylor* suggesting the abrogation of our conclusion and reasoning in *Sams*. On the contrary, *Taylor* tells us that a crime of violence requires, as an element, "the use, attempted use, or threatened use of force." *Taylor*, 596 U.S. at 853. Our Circuit's definition of intimidation—conduct from which a

reasonable person "could infer a threat of bodily harm"—fits neatly into that box. *See Kelley*, 412 F.3d at 1244. Our binding precedent in *Sams* thus controls. *See Archer*, 531 F.3d at 1352. Therefore, because bank robbery in violation of § 2113(a) is a crime of violence, we affirm Armstrong's conviction on Count 4.

We reach the same conclusion for Count 12. This Court has previously held—both before and after *Taylor*—that "[o]ne who aids and abets a crime of violence 'necessarily commits a crime that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *Alvarado-Linares*, 44 F.4th at 1348 (quoting *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016)). We reach this conclusion because aiding and abetting "is not a separate federal crime, but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." *Id.* (quoting *United States v. Sosa*, 777 F.3d 1279, 1292 (11th Cir. 2015)). Accordingly, even though Armstrong's conviction under Count 12 was premised on an aiding and abetting theory, it is nevertheless a crime of violence—akin to bank robbery as a principal—for § 924(c) purposes. *Id.*; *see also Sams*, 830 F.3d at 1239. We therefore affirm Armstrong's conviction on Count 12.

## C. Count 10

Count 10, which relates to Armstrong's conviction for aiding and abetting an attempted bank robbery, requires a different approach. At the outset, we can set aside the "aiding and abetting" qualifier because, as we have said, that is merely a legal theory "that

permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." *Alvarado-Linares*, 44 F.4th at 1348. We are then left to decide whether attempted bank robbery categorically requires proof "that the defendant used, attempted to use, or threatened to use force." *Taylor*, 596 U.S. at 852. We conclude that it does.

The first time this case was before this Court, we relied on *St. Hubert* for the principle that attempting to commit a crime of violence is, itself, a crime of violence for § 924(c) purposes. *See St. Hubert*, 909 F.3d at 351–52 ("[A] completed Hobbs Act robbery itself qualifies as a crime of violence under § 924(c)(3)(A) and, therefore, attempt to commit Hobbs Act robbery requires that St. Hubert intended to commit every element of Hobbs Act robbery, including the taking of property in a forcible manner."). *Taylor* abrogated that portion of *St. Hubert*, though, in holding that we must assess whether the attempt "requires proof that the defendant used, attempted to use, or threatened to use force." *Taylor*, 596 U.S. at 852; *see also Alvarado-Linares*, 44 F.4th at 1346 n.2 ("In so holding, *Taylor* overruled our decision in . . . *St. Hubert*, which held that any attempt to commit a crime of violence necessarily qualifies as a crime of violence." (citation omitted)). Instead, we must address the polestar question defined in *Taylor*:

> The elements clause does not ask whether the defendant committed a crime of violence *or* attempted to commit one. It asks whether the defendant *did* commit a crime of violence—and it proceeds to define a crime of violence as a felony that includes as an

21-11252                Opinion of the Court                    19

> element the use, attempted use, or threatened use of
> force.

596 U.S. at 853 (emphasis in original).  We must, therefore, turn back to the elements of the crime charged in Count 9.[4]  Here, we find a crucial distinction between § 2113(a) and § 1951, which the Court parsed in *Taylor*, necessarily leading to a different result.

In writing the bank robbery statute, Congress codified what an "attempt" entails:

> (a) *Whoever, by force and violence, or by intimidation,* takes, or *attempts to take*, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;
>
> . . .
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

---

[4] Armstrong's indictment alleged that he aided and abetted his co-defendants in "knowingly attempt[ing] to take from the person and presence of anther, that is, a bank employee, by force and violence, and by intimidation, certain money" from a federally insured bank.  And when Armstrong pled guilty to that offense, he admitted that he "intended to take money possessed by a federally insured bank from or in the presence of the person described in the Second Superseding Indictment; and [he] intended to do so by intimidation," specifically that he "held PNC Bank employees at gunpoint and ordered them to get money out of the safe."

§ 2113(a) (emphases added).  Thus, under the statutory text, one commits an attempted bank robbery when, by force and violence or by intimidation, he attempts to take money from a federally insured bank.  Section 1951, on the other hand, is structured differently and does not require any actual or threatened force to sustain a conviction for attempted Hobbs Act robbery.  That charge, the Supreme Court tells us, requires the government to prove only two things: (1) that "[t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force," and (2) that "he completed a 'substantial step' toward that end." *Taylor*, 596 U.S. at 851.  As Justice Gorsuch's hypothetical about a thwarted Hobbs Act robber illustrates, a criminal can commit an attempted Hobbs Act robbery without actually using force or violence.  *See id.* at 851–52.  Not so for an attempted bank robbery under § 2113(a), however, because Congress criminalized *only* attempts that occur "by force and violence, or by intimidation."  To demonstrate, we will borrow the hypothetical facts from *Taylor*, but direct them towards a bank instead of a store.

Suppose Adam tells a friend that he is planning to rob a particular bank, which is insured by the Federal Deposit Insurance Corporation, on a particular date.  He then sets about researching the bank's security measures, layout, and the time of day when its cash drawers and safes are at their fullest.  He buys a ski mask, plots his escape route, and recruits his brother to drive the getaway car.  Finally, he drafts a note—"Your money or your life"—that he plans to pass to the bank teller.  The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant

response.   When the day finally comes and Adam crosses the threshold into the bank's lobby, the police immediately arrest him. It turns out Adam's friend tipped them off.

Taking the facts of this hypothetical, Adam has not, under § 2113(a)'s first paragraph, committed an attempted bank robbery because the statute requires an element of "force and violence, or . . . intimidation" to sustain that conviction.[5]   Instead, Adam has

---

[5] We recognize that our sister circuits are divided on this question. *Compare United States v. Thornton*, 539 F.3d 741, 746 (7th Cir. 2008) ("simply read[ing] the text" to conclude that "[t]he 'by force and violence, or by intimidation' language relates to both 'takes' and the phrase 'attempts to take'"), *United States v. Bellew*, 369 F.3d 450, 453–55 (5th Cir. 2004) (examining the plain text and legislative history and concluding that the phrase "by force and violence, or by intimidation" modifies both "takes" and "attempts to take"), *and United States v. Brown*, 412 F.2d 381, 383 (8th Cir. 1969) ("It is apparent that in the statute under consideration [§ 2113(a)] the 'attempt' relates to the taking and not to the intimidation." (quoting *United States v. Baker*, 129 F. Supp. 684, 686 (DS.D. Cal. 1955)), *with United States v. Stallworth*, 543 F.2d 1038, 1040–41 (2d Cir. 1976) (affirming an attempted bank robbery conviction where the defendants neither entered the bank nor brandished weapons, based on the Model Penal Code definition of "attempt" and public policy considerations), *United States v. Jackson*, 560 F.2d 112, 116–17 (2d Cir. 1977) (same), *United States v. McFadden*, 739 F.2d 149 (4th Cir. 1984) (adopting *Stallworth*, 543 F.2d at 1040), *United States v. Wesley,* 417 F.3d 612 (6th Cir. 2005) (adopting *Jackson*, 560 F.2d at 116), *and United States v. Moore*, 921 F.2d 207, 209 (9th Cir. 1990) (announcing, without analysis, that "[c]onviction under section 2113 requires only that the defendant intended to use force, violence or intimidation and made a substantial step toward consummating the robbery"). Because we read the plain text of the statute to require an element of force, violence, or intimidation, we join the Fifth, Seventh, and Eighth Circuits. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the

potentially committed a bank burglary because he entered a bank with the intent to commit a felony therein, within the scope of § 2113(a)'s second paragraph. *See Prince v. United States*, 352 U.S. 322, 328 (1957) ("It is a fair inference from the wording in the Act, uncontradicted by anything in the meager legislative history, that the unlawful entry provision [in § 2113(a)'s second paragraph] was inserted to cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime.").

Consider one more tweak to the *Taylor* hypothetical to underscore what we mean: imagine that Adam handed the note to the bank teller, and she read it before the police ran in to arrest Adam. In that case, he would be within the scope of § 2113(a)'s first paragraph because his note was "intimidating" and he used it in an attempt to take money from the bank. The act of intimidation is what brings this conduct into the reach of the bank robbery statute.

Back we turn to *Taylor*'s test. Did the defendant commit "a felony that includes as an element the use, attempted use, or threatened use of force?" *Taylor*, 596 U.S. at 853. We answer in the affirmative. Attempted bank robbery under § 2113(a) is a crime of violence because it requires as an element that the defendant acted

---

language and design of the statute as a whole."). We note, in rejecting the view shared by the Second, Fourth, and Sixth, and Ninth Circuits, that none of those courts engaged with the text of the statute—as we are required to do—in reaching their conclusions.

"by force and violence, or by intimidation" in committing the inchoate crime. *See* § 2113(a); *Taylor*, 596 U.S. at 853. Armstrong's conviction under § 924(c) in Count 10, therefore, stands.

## IV.    CONCLUSION

For the foregoing reasons, we affirm Armstrong's convictions for Counts 4, 10, and 12.

**AFFIRMED.**

21-11252    Jordan, J., Concurring in Part and Dissenting in Part    1

JORDAN, Circuit Judge, Concurring in Part and Dissenting in Part:

Applying the categorical approach under the elements clause of the Armed Career Criminal Act, 18 U.S.C. § 924(c)(3)(A), often proves a difficult enterprise. So it is here. Acknowledging that the issue before us is hard, my resolution is different than that reached by the court in Part III.C, and I therefore respectfully dissent from that aspect (and only that aspect) of its opinion.

**I**

In Count 10, Mr. Armstrong was convicted of using, carrying, and brandishing a firearm in relation to a crime of violence. *See* 18 U.S.C. § 924(c)(1)(A)(ii). The crime of violence alleged in Count 10 was aiding and abetting attempted bank robbery in violation of 18 U.S.C. § 2113(a). The question, as the court correctly frames it, is whether attempted bank robbery in violation of § 2113(a) is categorically a crime of violence. *See* Maj. Op. at 18. It is one of first impression in this circuit.

The Supreme Court recently held that attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), is not categorically a crime of violence under the ACCA's elements clause. *See United States v. Taylor*, 596 U.S. 845, 852 (2022). For the reasons which follow, I would hold—consistently with *Taylor*—that attempted bank robbery in violation of § 2113(a) is also not categorically a crime of violence.

2    Jordan, J., Concurring in Part and Dissenting in Part    21-11252

**A**

I'll start with the text.  The federal bank robbery statute punishes, in relevant part, anyone who *"by force and violence, or by intimidation, takes, or attempts to take*, from the person or presence of another, . . . any property or money or any other thing of value, belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings or loan association.  § 2113(a) (emphasis added).

As the court reads this provision, attempted bank robbery requires force and violence or intimidation.  This is because the "by force and violence, or by intimidation" clause precedes the "attempts to take" clause, and so "Congress has codified what an 'attempt' entails."  Maj. Op. at 20.  Essentially, the court's premise is that the "by force and violence, or intimidation" clause is baked into the offense of attempted bank robbery.  According to the court, therefore, an attempted bank robbery cannot occur unless actual force, violence, or intimidation is used in the attempt.  *See id.*

The court, however, cites to no authority for this proposition.  In fact, research reveals a circuit split as to whether a defendant can be convicted of attempted bank robbery under the first paragraph of § 2113(a) without using *actual* force, violence, or intimidation in the attempt.  As it turns out, the majority of circuit courts have held that actual force, violence, or intimidation is *not* required for an attempted bank robbery conviction under the first paragraph of § 2113(a) and have upheld attempt convictions

21-11252   Jordan, J., Concurring in Part and Dissenting in Part   3

without such conduct.  And our circuit—like nearly every other—
has aligned itself with the majority view in upholding convictions
for attempted bank robbery on sufficiency grounds even where
there is no evidence that the defendant actually used force,
violence, or intimidation.  Most of these convictions involve some
substantially similar version of the facts posed in the majority's
hypothetical: a defendant intends to rob a bank, takes substantial
steps toward completing the robbery—such as acquiring
equipment, staking out the bank, securing a getaway car, and
drafting a threatening note—but is stopped or foiled before he has
the chance to actually threaten or intimidate anyone.

**B**

The Second Circuit was the first to answer the question we
face today in *United States v. Stallworth*, 543 F.2d 1038, 1040–41 (2d
Cir. 1976).    In *Stallworth*, the Second Circuit rejected the
defendants' argument that their conduct could not amount to
attempted bank robbery because they neither entered the bank nor
brandished weapons.  *See id.* at 1040.  Deeming that contention
"wooden logic," the Second Circuit emphasized that "[a]ttempt is
a subtle concept that requires a rational and logically sound
definition, one that enables society to punish malefactors who have
unequivocally set out upon a criminal course without requiring
law enforcement officers to delay until innocent bystanders are
imperiled." *Id.* at 1040–41.  Relying on the "classical elements" of
attempt, which mirror those of the Model Penal Code, it held that
the defendants committed attempted bank robbery because they
reconnoitered the bank, discussed their plan of attack, and armed

4      Jordan, J., Concurring in Part and Dissenting in Part   21-11252

themselves with guns and masks—despite having been caught and arrested before entering the bank. *See id.* at 1041. Those "classical elements" of attempt require the government to show that the defendant was acting "with the kind of culpability otherwise required for the commission of the crime he is charged with attempting," and that "the defendant . . . engaged in conduct which constitutes a substantial step toward commission of the crime, conduct strongly corroborative of the firmness of the defendant's criminal intent." *Id.* at 1040 (citing *United States v. Mandujano*, 499 F.2d 370, 376–77 (5th Cir. 1974)).

The Second Circuit reaffirmed this holding in *United States v. Jackson*, 560 F.2d 112, 119–121 (2d Cir. 1977), where it again rejected a defendant's argument that § 2113(a)'s first paragraph "clearly contemplate[s] that actual use of force, violence, or intimidation must precede an attempted taking in order to make out the offense of attempted bank robbery." *Id.* at 116. Unpersuaded, the Second Circuit held that the defendant could be convicted for attempted bank robbery under the first paragraph of § 2113(a) based on the two-tiered attempt inquiry reflected in the Model Penal Code and now universally accepted among the circuit courts. *See id.* at 117–18; Model Penal Code § 5.01 (1962).

The Fourth, Sixth, and Ninth Circuits have followed suit. *See, e.g.*, *United States v. McFadden*, 739 F.2d 149, 152 (4th Cir. 1984) (agreeing with the Second Circuit's approach and the Model Penal Code's definition of attempt); *United States v. Wesley*, 417 F.3d 612, 618 (6th Cir. 2005) (agreeing with the majority view in an

21-11252    Jordan, J., Concurring in Part and Dissenting in Part    5

alternative holding and explicitly rejecting the minority approach to the question); *United States v. Moore*, 921 F.2d 207, 209 (9th Cir. 1990) (agreeing with the majority view). For example, the Sixth Circuit reasoned that "to read the statute as [the] defendant urges would be inconsistent with our definition of attempt crimes, and would, without reason, require proof that a defendant actually confronted someone in the bank before he could be convicted of attempted robbery." *Wesley*, 417 F.3d at 618. Thus, it held that "the only reasonable interpretation is that the statute criminalizes attempted taking 'by force [and] violence, or by intimidation.' Actual intimidation is not required to prove attempted bank robbery under the first paragraph of 18 U.S.C. § 2113(a)." *Id*. The Ninth Circuit, for its part, clarified the required elements of an attempt under § 2113(a): "Conviction [for attempted bank robbery] under [§] 2113 requires only that the defendant intended to use force, violence[,] or intimidation and made a substantial step toward consummating the robbery." *Moore*, 921 F.2d at 209.

## C

Nearly every circuit—including our own in unpublished decisions—has upheld convictions for attempted bank robbery under the first paragraph of § 2113(a) even where there was no evidence that the defendant used actual force, violence, or intimidation. Our cases include *United States v. Barriera-Vera*, 303 F. App'x 687, 695 (11th Cir. 2008) (overturning district court's judgment of acquittal on attempted bank robbery charge where the defendant cased the credit union, had a loaded gun and a mask in his car, and drove near the credit union, but was thwarted by

police and arrested in a different location), and *United States v. Brown*, 375 F. App'x 927, 930–33 (11th Cir. 2010) (noting that whether actual intimidation is required is an issue of first impression but upholding attempted bank robbery conviction on facts similar to those in *Barriera-Vera*).

The First, Third, Eighth, and Tenth Circuits have done the same. *See, e.g.*, *United States v. Chapdelaine*, 989 F.2d 28, 32–33 (1st Cir. 1993) (upholding conviction where the defendants cased the bank, positioned getaway vehicles for escape, and acquired weapons, but never entered the bank); *United States v. Garner*, 915 F.3d 167, 169–71 (3d Cir. 2019) (same on similar facts); *United States v. Johnson*, 962 F.2d 1308, 1312 (8th Cir. 1992) (same on similar facts); *United States v. Carlisle*, 118 F.3d 1271, 1273–74 (8th Cir. 1997) (same on similar facts); *United States v. Crawford*, 837 F.2d 339, 340 (8th Cir. 1988) (same on similar facts); *United States v. Prichard*, 781 F.2d 179, 182 (10th Cir. 1986) (citing to *McFadden*, 739 F.2d at 152, with approval, and upholding conviction on similar facts). So there are nine circuits—the First, Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth, and Eleventh—which do not require the use of force, violence, or intimidation for an attempt conviction under the first paragraph of § 2113(a).

### D

The Fifth and Seventh Circuits, which make up the minority view, take what they consider "the most natural" reading of the text of § 2113(a). Based on their reading of the statutory language, they require force, violence, or intimidation for an attempted bank

21-11252    Jordan, J., Concurring in Part and Dissenting in Part    7

robbery.  *See United States v. Bellew*, 369 F.3d 450, 454–55 (5th Cir. 2004); *United States v. Thornton*, 539 F.3d 741, 747 (7th Cir. 2008).

In *Bellew*, the Fifth Circuit held that attempted bank robbery under the first paragraph of § 2113(a) requires the government to prove that the defendant actually committed an act of force, violence, or intimidation in an attempt, because the "force and violence, or intimidation" clause precedes the "attempts to take" clause.  *See* 369 F.3d at 454–55.  That rationale is almost identical to the one used by the court today.

The Seventh Circuit agreed with the Fifth Circuit and noted that "[u]nder a straightforward reading of § 2113(a), the 'attempt' language related only to the taking and not to the intimidation." *Thornton*, 539 F.3d at 747.  The Seventh Circuit explained that more than an "attempt to intimidate while attempting to rob a bank" is necessary; otherwise, the attempt language would precede the "by force and violence, or intimidation" language.  *See id.*  Therefore, it held that actual force and violence or intimidation is required, "whether the defendant succeeds (takes) or fails (attempts to take) in his robbery attempt."  *Id.*

## II

In my view, the text of § 2113(a) is not clear on its face as to the elements of an attempted bank robbery.  "The statutory language is perfectly ambiguous on this point." *Fla. Dep't of Revenue v. Piccadilly Cafeteria, Inc.*, 554 U.S. 33, 54 (2008) (Breyer, J., dissenting).

8    Jordan, J., Concurring in Part and Dissenting in Part   21-11252

As I read the text, it is amenable to different readings. For example, as the Sixth Circuit explained, one reasonable interpretation of the text is that the statute criminalizes "attempted *taking* 'by force [and] violence, or by intimidation." *See Wesley*, 417 F.3d at 618 (emphasis added). But the text can also be read so that the "by force and violence, or by intimidation" language applies only to a substantive "taking" offense, not to an inchoate attempt. The defendant need only intend to use force, violence, or intimidation. *See Moore*, 921 F.2d at 209.

After giving this matter some thought, I side with the majority view. Applying the classic elements of attempt is more in line with how our circuit and the Supreme Court have defined the elements of attempt crimes, even when the elements of the attempt offense are purportedly baked into the relevant statute.

Criminal attempt is an inchoate crime. *See United States v. Dupree*, 57 F.4th 1269, 1272 n.1 (11th Cir. 2023) (en banc). As a general matter, an attempt offense requires an intent to commit the completed offense plus a "substantial step" toward its completion. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 106–07 (2007). *See also Alvarado-Linares v. United States*, 44 F.4th 1334, 1347 (11th Cir. 2022) ("[T]he hornbook criminal-law definition of 'attempt' is a (1) substantial step plus (2) intent.") (citing W. LaFave, 2 Sub. Crim. Law § 11.4 (2d ed. 2003)).

That the term "attempt" is included in the first paragraph of § 2113(a) should not change these two classic elements. "There is no general federal statute which proscribes the attempt to commit

21-11252    Jordan, J., Concurring in Part and Dissenting in Part    9

a criminal offense." *United States v. Rivera-Sola*, 713 F.2d 866, 869 (1st Cir. 1983). An attempt offense may be incorporated into a particular statute, as in § 2113(a), or set forth in a separate statute, as in 21 U.S.C. § 846. In either case, federal courts typically employ the Model Penal Code's approach to attempt. *See, e.g., Resendiz-Ponce*, 549 U.S. at 108 n.4 (analyzing an attempt conviction under 8 U.S.C. § 1326, which makes it illegal to "enter, or attempt to enter"); *Rivera-Sola*, 713 F.2d at 869 (describing federal courts' use of § 5.01 of the Model Penal Code to define attempt). Indeed, the Supreme Court has noted that "the 'substantial step' requirement is implicit in the word 'attempt,'" even where the "attempt" language is included in the statute proscribing the substantive offense. *See Resendiz-Ponce*, 549 U.S. at 108 n.4.

Under the relevant provision of the Hobbs Act, "whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, *by robbery* or extortion *or attempts or conspires so to do*," may be subject to up to 20 years of imprisonment. 18 U.S.C. § 1951(a) (emphases added). Thus, to obtain a conviction for a *completed* Hobbs Act robbery, the government must show that the defendant engaged in the "unlawful taking or obtaining of personal property . . . of another, against his will, by means of actual or threatened force, or violence, or fear of injury." *Taylor*, 596 U.S. at 850. *See* § 1951(b) (defining robbery). Based on these elements, the Supreme Court in *Taylor*, like the majority of circuits, relied on the classic elements of attempt: "[I]t follows that to win a case for *attempted* Hobbs Act robbery the government must prove two things: (1) [t]he

defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* at 851.

Ultimately, the Court held in *Taylor* that attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c)'s elements clause because the government could convict a defendant for attempted Hobbs Act robbery by proving that he intended to take property by force or threat. *Id.* at 851–52. The court's only basis for distinguishing *Taylor* is premised on its reading of purported structural differences in the respective statutes. But the court provides no persuasive explanation as to why the elements of attempt under federal law should be ignored or displaced in this case. Our circuit "read[s] *Taylor* to hold that, where a crime may be committed by the threatened use of force, an attempt to commit that crime—*i.e.*, an attempt to threaten—falls outside the elements clause." *Alvarado-Linares*, 44 F.4th at 1346. And when the classic elements of attempt are properly considered, I think the majority view is better reasoned.

Like the majority of circuits, I believe that determining the elements of attempted bank robbery under § 2113(a) requires us to look at the general elements of attempt. A defendant can therefore be convicted of attempted bank robbery under the first paragraph of § 2113(a) without the actual use of force, violence, or intimidation, and that analysis is consistent with *Taylor*. And because the first paragraph of § 2113(a) can be read—and again, has been read by a majority of circuits—the same way the Supreme

21-11252   Jordan, J., Concurring in Part and Dissenting in Part  11

Court read the Hobbs Act, we should apply the teaching of *Taylor*: where a substantive crime may be committed by the threatened use of force, violence, or intimidation, an attempt to commit that crime is not categorically a crime of violence under § 924(c)'s elements clause.  *See Alvarado-Linares*, 44 F.4th at 1346.

### III

The categorical approach requires us to decide "whether the federal felony at issue *always* requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."  *Taylor*, 596 U.S. at 850. Here, as both a textual and practical matter, it does not. "Individuals like our foiled robber [Adam] who are arrested before they can threaten anyone may be convicted too."  *Id.* at 854. Because I believe that attempted bank robbery under the first paragraph of § 2113(a) can be committed without the actual use of force, violence, or intimidation, I disagree with the premise underlying the court's affirmance of Count 10 of Mr. Armstrong's conviction.  I therefore respectfully dissent as to Part III.C.